THE SECOND NATIONAL BANK OF NEW HAVEN *v.*
JAMES A. DYER ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 5—decided November 16, 1939.

*Leonard M. Daggett* and *I. Gordon Colby, Jr.,* for the appellant (plaintiff).

*Frank E. Callahan,* with whom was *J. Dwight Dana,* for the appellee (defendant The Prudential Insurance Company of America).

HINMAN, J.   This litigation originated in a complaint brought by the plaintiff to foreclose a mortgage made by the named defendant to the Thomas F. Clark Company and assigned by that company to the plaintiff.   The Prudential Insurance Company was made a party defendant as claiming an interest in the mortgaged premises alleged to be subsequent to that of the plaintiff.   The insurance company, hereinafter referred to as the defendant, filed, with an answer, a cross-complaint, claiming adjudication that it, instead of the plaintiff, is the owner and holder of the mortgage and the debt secured thereby, and relief appropriate thereto.

The substituted cross-complaint alleged in detail the history of the rather complicated transaction which may be summarized as follows: The Clark Company, which was engaged in the business of loaning money on mortgages, had a contract with the de-

fendant giving to it an exclusive right to submit to the defendant applications for loans on improved real estate in certain territory. It was the practice of the defendant not to take mortgages to secure loans for construction purposes until the improvements had been completed. To provide funds for the construction, it was the practice of the Clark Company to obtain a loan from a bank, assigning to it as security a mortgage made to the Clark Company, and to make advances therefrom to the mortgagor. Upon completion of the improvement, the defendant would purchase the mortgage from the Clark Company, which would obtain a reassignment from the bank and assign the mortgage and the note secured by it to the defendant. The defendant having approved an application submitted by the Clark Company for a loan to Dyer he executed a note and mortgage to the Clark Company, and that company made a written assignment of the mortgage to the plaintiff as collateral security for a loan. This assignment was never recorded. Subsequently the Clark Company executed and delivered to the First National Bank and Trust Company of New Haven an assignment of the same mortgage as collateral security for a loan, furnishing the bank a certificate of title showing that the company held the mortgage as of record, and also indorsed and delivered to it an instrument which purported to be, but was not in fact as Dyer's signature thereto was forged, the note secured by the mortgage. This assignment was duly recorded. When construction of buildings on the mortgaged premises had been completed, the Clark Company furnished the defendant a certificate of title showing that the land records disclosed the Dyer mortgage to it and its assignment to the First National Bank and Trust Company, and thereafter delivered to attorneys repre-

senting the defendant the false note, the original assignment to the First National Bank, the latter's reassignment to the Clark Company and an assignment by that company to the defendant, whereupon the defendant's attorneys disbursed the amount of the note and mortgage ($10,000) in the manner directed by the defendant. The reassignment from the bank and the assignment by the Clark Company to the defendant were filed for record at once. The cross-complaint further alleged that the defendant had no knowledge of the earlier assignment to the plaintiff and relied upon the condition of title as shown by the land records, and that if the plaintiff had recorded the assignment to it the defendant would not have been misled into believing that the instrument delivered to it was the genuine mortgage note and would not have paid the principal amount thereof to or for the Clark Company.

The plaintiff demurred to the cross-complaint, the trial court sustained the demurrer and, the defendant refusing to plead over, judgment was rendered for the plaintiff upon the cross-complaint. Upon the defendant's appeal therefrom to this court (121 Conn. 263, 184 Atl. 386) the ruling on demurrer was held to be erroneous and the case was remanded for further proceedings. The question, raised by the demurrer, which was decisive of the former appeal was as to the effect of the plaintiff's failure to record its assignment upon the rights of the defendant as a subsequent assignee. It was there recognized (p. 269) that ordinarily the indebtedness is the principal thing and a mortgage securing it incidental, so that an assignment of the debt carries with it the right and benefit of the security, though that be not assigned, but assignment of the security apart from the debt transfers the bare title, the beneficial interest

remaining with the owner of the debt. In the present case, however, it appeared from exhibits attached to the cross-complaint that the assignment to the First National Bank, the reassignment to the Clark Company, and the latter's assignment to the defendant did not purport to be a bare assignment of the Dyer mortgage but specifically included also the note secured thereby. Therefore the issue was "not between one to whom an indebtedness has been assigned and another to whom the bare security for that indebtedness has been transferred, but between two parties each of whom holds an assignment of the debt and the mortgage securing it." Idem, p. 270. In such a situation the plaintiff would be prior in right but for the effect of the recording statute (General Statutes, § 5010) the protection of which extends to "those who have given credit to one appearing upon the record to be the owner of the property although he had no beneficial right in it. . . . The basis of the protection so afforded is an equitable estoppel which arises out of the fact that the person who has failed to record the instrument under which he claims has thereby misled creditors into the belief that title is in the person who appears upon the record to own the property." (P. 271). We held that under this principle of estoppel the allegations of the cross-complaint, if proved, by reason of the plaintiff's failure to record its assignment would bar it from claiming a right to collect the indebtedness, through the enforcement of the mortgage, as against the defendant as subsequent assignee and would give to the latter a prior right as regards such collection. (Pp. 272, 274).

After the remand following the appeal the plaintiff filed an answer to the cross-complaint, including allegations, in a second defense, that the defendant and its agents and attorneys "neglected to use due and

ordinary care" to ascertain whether the note delivered to them was genuine, in fact signed by Dyer, and the note which the mortgage referred to. It also alleged, in a third defense, that the Clark Company kept books and records which showed their transactions regarding this note and mortgage both with the plaintiff and the First National Bank, which the defendant had means and opportunity of examining and of informing itself that the plaintiff had a claim with respect thereto, but failed to avail itself of that means and opportunity. Various amendments to the pleadings were filed from time to time, and a judgment of interpleader was rendered pursuant to which the defendant Dyer paid in to the clerk of the court the principal of the note and interest; after trial on the merits judgment was rendered that this sum, less attorneys' and other fees and disbursements, be paid over to the defendant.

Since estoppel in pais is available only for the protection of claims made in good faith, a party, to be entitled to the benefit of it is himself bound to the exercise of good faith in the transaction and in his reliance upon the conduct of the other party. 19 Am. Jur., p. 739. The special defenses were calculated to invoke the principle that good faith includes the exercise of reasonable diligence to learn the truth and estoppel is not available where the party claiming it was put on inquiry and had available means for ascertaining the true situation. 19 Am. Jur., p. 741; *Huntley* v. *Holt*, 58 Conn. 445, 450, 20 Atl. 469; *Moore* v. *Bowman*, 47 N. H. 494, 499; Bigelow, Estoppel (6th Ed.) 682. The facts found proven on the trial sufficiently supported the allegations of the substituted cross-complaint to entitle the defendant to the benefit of estoppel under the decision on the former appeal unless the facts relevant to the issue raised

by the special defenses avail to deprive it of that right. The finding, with such corrections as the plaintiff is entitled to, includes the following facts relevant to these defenses: Preparatory to the assignment of the mortgage by the Clark Company to the defendant, a certificate, dated February 28, 1934, of title to the premises covered by the mortgage, prepared by a firm of attorneys in Stamford specializing in examining and certifying titles to real estate, was furnished by the Clark Company to the defendant. This certificate showed the execution of the mortgage to the Clark Company and its subsequent assignment by that company to the First National Bank and that on that date the mortgage stood of record in the name of that bank. Subsequently the defendant wrote the attorneys directions for closing the transaction upon delivery of the original note, "a photostatic copy of which is enclosed for your guidance," the original assignment to the First National Bank, reassignment by that bank to the Clark Company, assignment of note and mortgage to the defendant, together with further requirements, and directing the manner of disbursement of the $10,000 to be remitted by the defendant. On March 20th Mr. Gaffney, secretary of the Clark Company, delivered to Mr. Sherwood, a member of the firm of attorneys, the above-mentioned papers, including the instrument purporting to be the note of Dyer which had previously been held by the First National Bank. Upon receipt of all of these documents, Mr. Sherwood, on behalf of the defendant, disbursed the $10,000 as directed by delivery to Gaffney of a check to the First National Bank for $8742.25, being the amount of its loan to the Clark Company with interest, and a check to the Clark Company for the balance, $1257.75. In response to plaintiff's motion for disclosure, the defendant disclosed that the photostatic

copy of the note, mentioned in and enclosed with the above-mentioned letter from the defendant to the attorneys, was obtained by the defendant from the Clark Company, and that it was not known that the signature of Dyer upon the mortgage deed, which was then in possession of the defendant, was compared with the signature upon that photostatic copy. The defendant believed that the instrument of which this was a copy was the genuine note of Dyer. The original note remained in the possession of the plaintiff until produced and offered in evidence in this action.

For many years the defendant had invested largely in real estate mortgages and purchased numerous mortgages from the Clark Company, many of which purchases were handled by C. L. Thiele, a lawyer in the employ of the defendant at its home office in Newark, New Jersey, and the details of this transaction were handled by him in the same manner as those concerning prior purchases from the Clark Company. He did not compare the signature on the photostat with the signature of Dyer upon the original mortgage deed. Mr. Sherwood had handled many similar transactions involving the purchase by the defendant of notes and mortgages from the Clark Company and the details of this transaction were handled by him in the same manner as those concerning similar prior transactions. In all of these transactions neither the defendant, Mr. Thiele nor Mr. Sherwood had ever had any reason to question the integrity of the Clark Company or its representatives or the regularity of their dealings.

The contract between the defendant and the Clark Company hereinbefore referred to included a provision that the latter, upon request, should collect principal and interest payments on all loans by the defendant in the territory covered by the contract,

should keep records pertaining to all such loans and allow the defendant access to all such books and records. Between December, 1933, and May, 1934, the defendant examined the books and records of the Clark Company relating to loans made by the defendant, the examination so made being limited to records concerning mortgages owned by the defendant which were being serviced in the matter of collecting principal and interest by the Clark Company. The Dyer mortgage was not such a mortgage prior to March 20, 1934. Among the books kept by the Clark Company was one in which were entered the details of bank loans obtained by that company, which showed in one place the loans obtained from the plaintiff and in another those obtained from the First National Bank, the entries showing the amount and date of each loan and the payment thereof, if paid. These entries included the loans obtained from the plaintiff and from the First National Bank upon the security of the Dyer mortgage. In another book all the details of any one loan were entered together on one page. Among these entries, under the head of the Dyer loan, there appeared both the loans made by the plaintiff and the First National Bank. The finding that the defendant had no right or opportunity to examine any of the private books or records of the Clark Company is not questioned, but the plaintiff attacks the finding that the defendant had no opportunity to see the two books last mentioned, they being private books of the Clark Company. It is apparent, however, that the defendant had no reason or occasion to examine these accounts, since they pertained entirely to loans obtained from banks by the Clark Company itself and not to matters subsequent to the assignment of the notes and mortgages to the defendant. The defendant had no actual notice of the assignment of the

genuine Dyer note to the plaintiff until immediately prior to May 23, 1934, when the irregularity in the transaction was discovered and communicated by the plaintiff to the defendant. The plaintiff, also, had had numerous transactions with the Clark Company and had never had any reason to question its integrity, and did not verify the signature of Dyer on the note held by it until after May 23, 1934.

From the facts found the trial court concluded that, in handling the transactions, both Mr. Thiele and Mr. Sherwood acted with reasonable prudence under the circumstances, that neither the defendant nor the attorneys owed the plaintiff a duty to compare signatures or otherwise in order to protect it from the consequences of its failure to record the assignment of mortgage to it, that there was no negligence by the defendant or its agents or the attorneys in connection with the transaction, but that the plaintiff's loss is the result of its own negligence in failing to record the assignment. These conclusions are the principal objects of attack upon this appeal.

The estoppel relied upon by the defendant was that arising from the conduct of the plaintiff in withholding from record the assignment of mortgage to it and thereby misleading the defendant to the belief that the recorded assignment to the First National Bank was the first and only assignment outstanding and in proceeding on that belief. In order to have the benefit of such estoppel one needs not only to have been without knowledge of the real facts but also must have exercised such reasonable diligence, to acquire such knowledge, as the circumstances require. "If he conducts himself with a careless indifference to means of information reasonably at hand, or ignores highly suspicious circumstances which should warn him of danger or loss, he cannot invoke the doctrine."

*Graham* v. *Southington Bank & Trust Co.,* 99 Conn. 494, 509, 121 Atl. 812, quoting 21 C. J. 1129, § 131. *Weidemann* v. *Springfield Breweries Co.,* 78 Conn. 660, 664, 63 Atl. 162; 2 Pomeroy, Equity Jurisprudence (4th Ed.) § 810. . He is not bound to take better precautions than the other party cared to take. *Graham* v. *Southington Bank & Trust Co.,* supra, 510. What constitutes this reasonable diligence is a question of fact to be resolved upon all the circumstances of the particular case. In some cases the invoking party might reasonably rely upon the acts or conduct of the party to be estopped without any inquiry, while in others it would be negligence and want of good faith not to make use of means at hand to ascertain the truth. *Moore* v. *Bowman,* 47 N. H. 494, 499; *Odlin* v. *Gove,* 41 N. H. 465, 476; *Prudential Ins. Co.* v. *National Bank of Commerce,* 227 N. Y. 510, 522, 125 N. E. 824. The representation or conduct relied on may itself be such as to justifiably cause the party to refrain from inquiry or from pursuing means of information. *Graham* v. *Thompson,* 55 Ark. 296, 299, 18 S. W. 58; *Graham Paper Co.* v. *Pembroke,* 124 Cal. 117, 121, 56 Pac. 627; 2 Pomeroy, op. cit., p. 1665.

Upon the testimony of an assistant cashier of the plaintiff bank it sought to have inserted a finding that one accustomed in a bank or similar institution to pass upon the genuineness of signatures, having before him the original Dyer mortgage and the photostat of the note, would not have accepted, without further verification, the signature on the latter as that of the signer of the mortgage. Not only was that not an admitted or undisputed fact but also it would not follow that an equal degree of skill in detecting variations in signatures and consequent duty is attributable to attorneys handling such a transaction as the present one. Also our inspection of these two exhibits indi-

cates that the trial court may well have concluded that they did not disclose such differences as would be likely to or should arouse suspicion of those attorneys. It appears from the evidence, not only that it was not proved that the estoppel certificate was actually signed by Dyer but also that the signature "Jas" instead of James accorded with a custom of Dyer which was familiar to Mr. Sherwood, so that this circumstance would not be calculated to suggest a question as to the authenticity of either that signature or those signed with Dyer's full name, as Mr. Sherwood had required him to sign on former occasions. No authority is cited or found which indicates that a title searcher or conveyancer, at least in the absence of suspicious circumstances, is under a duty to investigate the genuineness of signatures to confirm or contradict the state of title revealed by the land records; to so hold would be inconsistent with and impair the authoritative effect of our registry system, the importance of which was stressed on the former appeal. There was nothing else about the entire transaction which from the standpoint of the defendant and the attorneys would arouse suspicion that it was not entirely regular and like the numerous previous similar transactions. The land records afforded no intimation that the plaintiff or anyone except the First National Bank and the Clark Company had or claimed any interest and there was no reason apparent why the defendant should examine those of the Clark Company's books which pertained to matters foreign to the defendant's existing loans which had been made and were being serviced by the Clark Company. The facts found support the conclusions to the effect that the defendant is not barred by negligence from the benefit of estoppel.

As to the claim of the plaintiff that the defendant

did not rely solely upon the record title but also upon an assumption of good faith of the Clark Company, engendered by its reputation and the former course of dealings with it, it is enough to say that it sufficiently appears from the finding and conclusions that if the plaintiff had recorded its assignment the defendant would not have been misled as it was, whatever might have been the confidence which it had in the Clark Company. The past experience of the plaintiff and the attorneys with that company is of significance only as bearing upon the degree of diligence which, under all the circumstances, including this, due care required them to exercise as to the title to and authenticity of the note and mortgage. Neither under the contract of the defendant with the Clark Company nor otherwise under the circumstances, can the Clark Company be so regarded, as the plaintiff claims, as the defendant's agent in closing the transaction as to charge the defendant with the Clark Company's knowledge that the note delivered was spurious. For all relevant purposes the transaction was at arms length between the defendant and the Clark Company as principals.

There is no error.

In this opinion the other judges concurred.