### GERTRUDE B. STANIO
*vs.*
### BERNER LOHNE CO., INC., ET AL.

Superior Court     New Haven County     File No. 55667

MEMORANDUM FILED DECEMBER 12, 1939.

*Edward J. Brennan* and *Franklin Coeller,* of New Haven, for the Plaintiff.

*Sachs, Sachs & Sachs* and *Lyman H. Steele,* of New Haven, for the Defendants.

DICKENSON, J.   As a premise it may be said the action arises over a misunderstanding as to a street boundary, the plain-tiff charging the defendants with fraudulent representation and concealment as to its physical appearance on property bought by her of them.   It seems quite unlikely that the defendants would attempt to perpetrate a fraud so easy to discover and out-side of the probabilities the evidence is convincing that there was an honest mistake brought about by the fact that all parties took too much for granted.

The property involved in the action lies on the Ansonia Road in the Town of Woodbridge.   A tract of which it was a part was bought by the Tattersalls July 15, 1935, the defendant Merwin acting as agent for the seller.   On March 7, 1936, the Tattersalls deeded to the State of Connecticut a strip along the northern boundary adjacent to Ansonia Road.   Merwin acted as a witness and notary public and knew the general purpose of the purchase was to improve the highway, but it does not ap-pear that he knew where the conveyance left the northern boundary of the Tattersall land.   The state, while the Tatter-salls owned the property, widened the road, changed the grade of the land between their house and the travelled portion of the road, built a rock garden, a rock retaining wall and cement steps, leaving it, as it now is, as an apparently permanent lay-out.   In February, 1938, the Tattersalls placed their entire tract in the hands of Merwin to sell.

Sometime in April, 1938, the plaintiff became interested in the property through Mrs. Warnock, a real estate agent, and visited it with her husband and her father, Dr. Bergman.

She visited it thereafter on numerous occasions but before she had made up her mind to buy Merwin had interested Lohne of the Berner Lohne Company in the entire tract and the com-pany entered into a contract with the Tattersalls to purchase this in May.   The plaintiff then got in touch with Merwin who introduced her to Lohne.   The plaintiff's claim is that while inspecting the property, in company with her husband and father, Lohne paced off the disputed boundary along the edge of the travelled road indicating that this was the line.   The

evidence does not support this claim. It is apparent there was no attempt in this performance to do other than roughly estimate the length of that boundary and that no thought was given at that time by either the plaintiff or Lohne as to the street lines. It does not appear that the plaintiff ever asked where the boundary was or that the defendants ever told her. They believed it was in line with an old stone wall and fence and her claim is that she believed it to be the edge of the travelled road although she testified that Tattersall told her the state had put in the steps and she thought from this that the line was there.

It is a further claim of the plaintiff, however, that the defend-ants had a superior means of knowledge as to the position of the boundary and owed her the duty to disclose it to her and failed to do so. This is based upon the presumed knowledge they had from the deed of the Tattersalls to the state.

The fault with this claim is that plaintiff and defendants stood upon substantially the same ground as to this knowledge.

Merwin indeed was acquainted with the transfer for he took the acknowledgment of the deed, but the description in the deed, even if he read it, is not illuminating and I believe him when he says he did not know where the physical line ran but assumed it was in the stone wall. As to Lohne, his company contracted to buy the tract but two months before the plaintiff bought and took title on the same day that she did. He ap-pears to have known no more than the others as to the physical appearance of the boundary and had no greater opportunities than the plaintiff to discover it. If his presumption of knowl-edge must come from the deed to the state then it must be pre-sumed the plaintiff had the same knowledge that Lohne had.

It is indeed the law that a grantor may not set up the records as a defense when he has made express representations contrary to the record title and the grantee has relied upon these. *Loverin vs. Kuhne*, 94 Conn. 219, 225. But there were no such representations in the instant case and all parties were mistaken as to the true boundary and its physical appearance on the property.

It is said in *Myers vs. Burke,* 120 Conn. 69, 76, that it is a fundamental rule in the law of estoppel by conduct, that the person claiming an estoppel must show that he exercised due diligence to know the truth and that he was destitute not only of knowledge of the true state of things, but also of any con-

venient or available means of acquiring such knowledge. *And see, Second National Bank of New Haven vs. Dyer, 126* Conn. 101.

Apropos of another state of facts the Supreme Court has said (*Second National Bank of New Haven vs. Dyer,* 121 Conn. 263, 268) that "purchasers of interests in real estate are entitled to rely upon the land records as disclosing the true title." It may be suggested that in the absence of misleading statements on the part of a grantor they are expected to, for the court goes on to quote (p. 270) from an earlier case: "We have held the record constructive notice to all the world of land titles.... The maintenance of our system of registry of titles is of the greatest public importance, and he who acts in reliance upon the record has behind him not only the natural equities of his position, but also the especial equity arising from the protection afforded everyone who trusts the record."

The plaintiff is an intelligent woman. She was actively assisted in the purchase by her husband and father, both profes-sional men. In addition she had the advice of an agent of a bank which gave her a mortgage on the premises. An examin-ation of the deed of the Tattersalls to the state would have dis-closed a reference to a recorded map of the land taken by the state (see defendants' Exs. 7 and 8); and this map clearly indi-cates the location of the northern boundary in relation to such physical objects as trees, the concrete steps and state markers. In the absence of any evidence that the defendants made false representations, misled her, or were responsible for her failure to examine the records, it cannot be found that there was fraud by nondisclosure in the case.

"Nondisclosure as a species of fraud occurs only in excep-tional cases" (*Boardman vs. Burlingame,* 123 Conn. 646, 656), and assumes actual and not constructive knowledge on the part of the person charged (Restatement, Torts §§550, 551).

The facts will not support a finding of misrepresentation without fraud even if the complaint is broad enough to include such a cause of action.

At the conclusion of their negotiations the parties met in the office of a reputable conveyancer, the deeds were read, a map of the property examined and the transfers made. Later it was discovered that while from a physical standpoint the plaintiff's house stood well back from the highway with an apparently

permanent layout by the State Highway Department, the state held title to a line that ran close to the front of the plaintiff's house and included some of the trees that she had thought hers. When she called this to the attention of the defendants they appear to have been as much surprised as she. It seems evident that there was a mutual mistake as to the physical location of the boundary. The plaintiff might then have brought an equitable action of mutual mistake and asked for rescission and restitution. Instead she saw fit to retain the property, charge the defendants with fraud and sue for damages. It is held that she has failed to sustain her complaint.

Judgment is directed for all defendants against the plaintiff.