PETER FRANKE *v.* MARY C. FRANKE

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued May 12—decided July 7, 1953

*Louis Feinmark,* with whom was *Irving Smirnoff,* for the appellant (plaintiff).

*Joseph M. Brandon,* with whom, on the brief, were *David E. FitzGerald, Jr.,* and *Arthur H. Ratner,* for the appellee (defendant).

BALDWIN, J.  The plaintiff brought an action to the Superior Court in which he claimed to be the equitable owner of ninety-eight corporate shares of stock issued in the name of his wife, the defendant. He demanded that she be ordered to turn this stock

over to him, that the record ownership of the stock be placed in his name on the books of the corporation and that she be enjoined from interfering with his management, control and operation of the company. The court rendered judgment for the defendant and the plaintiff has appealed.

The plaintiff seeks extensive corrections in the finding. He claims that the court omitted certain details of fact which were, in effect, admitted or undisputed. An examination of the finding reveals that the detailed facts claimed by the plaintiff were sufficiently incorporated in it to present the plaintiff's claims on this appeal fairly. The finding is not subject to correction. It may be stated in summary as follows: The plaintiff came to this country from Italy in 1905 when he was sixteen years old. Without formal education, he worked at unskilled jobs. In 1918, he started, at Savin Rock, a business of preparing and packaging popcorn, which he sold under the name of "Honey Boy Popcorn." Prior to 1929, the plaintiff owned all the equipment used in the business, which he conducted in his individual name. He also owned real estate in West Haven where he lived.

The defendant attended school through the fifth grade and thereafter worked in a factory. She was married in 1917, at the age of twenty, to a Savin Rock carnival worker, by whom she had a son, Anthony. She obtained a divorce from her husband on May 24, 1929, and married the plaintiff on June 17, 1929. She had no property. Immediately after the marriage, she began to work with the plaintiff at his popcorn stand. He suggested that he would incorporate his business and give her most of the stock as a wedding present, both because she was devoting long hours of hard work to the business and to pacify her feelings, since she was incensed by

her discovery that he had concealed from her his own previous marriage and divorce. In July, 1929, the business was incorporated as "Honey Boy Popcorn, Inc." with an authorized capital of $25,000, divided into 250 shares of $100 each. The incorporators were the plaintiff, the defendant and Winifred Kennedy, a secretary of the attorney who had prepared the papers. The corporation was organized in October, 1929, with a paid-in capital of $10,000, for which 100 shares were issued. The plaintiff was president and treasurer, and the defendant vice president. The plaintiff transferred all of his property, including his real estate and the business, to the corporation in exchange for 100 shares of stock. A certificate for ninety-eight shares was issued to the defendant and certificates for one share each to the plaintiff and Miss Kennedy. Neither the defendant nor Miss Kennedy contributed any property or cash for her stock. An assignment of the certificate issued to Miss Kennedy was signed by her in blank and witnessed by the attorney. The defendant mistakenly signed a similar assignment of her certificate, but her signature was eradicated and the attorney told her not to sign it until the stock was to be transferred. The certificate was delivered to her and she kept it in her possession.

Although a corporation had been organized, the parties continued their activities as before. The business was conducted under the personal direction of the plaintiff. Wrappers on the popcorn sold by the company continued to carry the name "Peter Franke's Honey Boy Popcorn." The plaintiff sold and billed wholesale customers in his individual name. Licenses from the town of West Haven and the state were issued, and leases for the business were executed, in the plaintiff's name, as before. The

plaintiff hired and discharged employees, interviewed salesmen and set prices. Many companies and individuals doing business and corresponding with the company used the plaintiff's name, while others dealt with the corporation as such. The plaintiff took from corporate funds what money he needed for his own personal use and made substantial purchases on his own account. During 1945 and 1946, he constructed, partly with corporate funds, an amusement stand known as "The Fun House." The defendant received no salary. Household money as needed was taken from the cash receipts of the business. On the other hand, there was nothing about the nature of the business which required any elaborate corporate procedure. Neither party had any appreciation of the niceties of corporate operation. The plaintiff discontinued his personal checking account and used one in the name of the corporation upon which he drew checks as treasurer. Corporation meetings were held in 1940 and in 1946 for the purpose of executing mortgages on the real estate which had been transferred to the corporation by the plaintiff. At the end of each year, the withdrawals by the plaintiff were computed and entered upon the books of the company as salary paid to him.

The defendant relied upon the plaintiff and gave him a free hand in the conduct of the business. She did the housework and cared for her son and for a daughter born of the marriage. Husband and wife worked together in the business, preparing the popcorn, keeping the stand clean, making frozen custard, waiting on retail trade, preparing wholesale shipments for delivery around the state and carrying on the general manual work. Neither had any other source of income during this period. They acquired, however, a parcel of real estate in their joint names,

and the plaintiff acquired another parcel in his own name. In September, 1946, the defendant discovered that the plaintiff was interested in another woman. This precipitated trouble culminating in an argument during which the plaintiff said, in effect, that the defendant could take care of her business and he would take care of his. In December, 1946, the defendant caused a suit to be instituted in behalf of the corporation against the plaintiff, demanding an accounting. A series of negotiations to settle the difficulties between the parties came to naught. On May 19, 1947, at a duly called meeting of the corporation which the plaintiff refused to attend, the defendant was elected president and treasurer, and her son, Anthony, secretary. Thereafter, the defendant took full control of the corporate affairs. The trial court concluded that the statements and conduct of the plaintiff prior to and at the time of the formation of the corporation in 1929, coupled with the actual delivery of the stock certificate to the defendant, constituted a completed gift to her, and judgment was rendered for the defendant.

The decision of the case turns upon a question of fact. The defendant claims that it was the intent of the plaintiff to make a present gift of the stock to her. On the other hand, the plaintiff claims that it was his intent to retain ownership and control of a majority interest in the corporation during his life and that he transferred the stock to the defendant with the understanding that it would not take effect until his death, so that probate proceedings to vest title in her would be unnecessary. When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money. *Ward* v. *Ward,* 59 Conn. 188,

195, 22 A. 149; *Lowe* v. *Hendrick,* 86 Conn. 481, 483, 85 A. 795; *Zitkov* v. *Gorsky,* 106 Conn. 287, 289, 137 A. 751; *Samasko* v. *Davis,* 135 Conn. 377, 381, 64 A.2d 682; 1 Perry, Trusts & Trustees (7th Ed.) § 126; 54 Am. Jur. 158. If it can be proved that the intention of the parties was otherwise, there is no resulting trust. *Wilson* v. *Warner,* 89 Conn. 243, 246, 93 A. 533. If the purchase price is paid by one spouse and the conveyance is taken in the name of the other, there is a presumption that a gift was intended. *Ward* v. *Ward,* supra; *Dolan* v. *Dolan,* 107 Conn. 342, 345, 140 A. 745; *White* v. *Amenta,* 110 Conn. 314, 317, 148 A. 345. This presumption, however, is one of fact and not of law and may be rebutted. *Corr's Appeal,* 62 Conn. 403, 407, 26 A. 478; *Fox* v. *Shanley,* 94 Conn. 350, 357, 109 A. 249; 4 Pomeroy, Equity Jurisprudence (5th Ed.) p. 81. The instant case presented the question of the plaintiff's intent. Intent is a question of fact; *Meriden Trust & Safe Deposit Co.* v. *Miller,* 88 Conn. 157, 162, 90 A. 228; and the conclusion of the trier is not reviewable unless it is one which could not have been reached in logic and reason. *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181. The subordinate facts are ample to support the conclusion that the plaintiff intended to make a present gift of the stock to his wife. See *Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 606, 607, 159 A. 578.

The plaintiff claims that the defendant is estopped from asserting her ownership of a controlling interest in the corporation because for more than seventeen years she allowed the plaintiff to conduct the affairs of the company and treat it and its funds as his own. Estoppel rests upon the misleading conduct of one party to the prejudice of the other. *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783; *Linahan* v. *Linahan,* 131 Conn. 307, 327,

39 A.2d 895. The court's findings that neither party knew or understood the elements of corporate operation and that the plaintiff, as president and treasurer, would naturally direct the company's affairs in the same way as he had before its incorporation disprove his claim that the defendant's conduct misled him to his prejudice.

The plaintiff has assigned error in several rulings on evidence. His claims are without merit and require no discussion.

In this opinion the other judges concurred.

There is no error.