Peggy BEALLE and Morris A. Bealle, Plaintiffs,

v.

NYDEN'S, INCORPORATED, and Joseph P. Weyerstrass, Defendants.

Civ. A. No. 10334.

United States District Court
D. Connecticut.

July 30, 1965.

---

Theodore I. Koskoff and T. Paul Tremont, of Murov & Tremont, Bridgeport, Conn., for plaintiffs.

John H. Welch, Jr., of Shapiro & Belinkie, Bridgeport, Conn., for defendant Weyerstrass.

TIMBERS, Chief Judge.

## QUESTIONS PRESENTED

Defendant Joseph P. Weyerstrass' motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment raises these questions: whether the one year Connecticut statute of limitations for personal injury actions, Conn.Gen.Stat. § 52–584 (1958), bars an action commenced in the District Court for the Southern District of New York more than one year after the cause of action arose, dismissed there for improper venue and transferred, pursuant to 28 U.S.C. § 1406(a), to this Court; and, if so, whether defendant is equitably estopped from raising the bar of the Connecticut statute of limitations by reason of representations made to plaintiffs' attorney by defendant's insurer. The Court holds the former question must be answered in the affirmative, the latter in the negative, and accordingly grants defendant Weyerstrass' motion for summary judgment.

## FACTS

A truck, owned by defendant Nyden's Incorporated and operated by its employee, defendant Joseph P. Weyerstrass, collided September 2, 1960 on Main Street, Bridgeport, Connecticut with an automobile operated by plaintiff Morris A. Bealle in which his wife, plaintiff Peggy Bealle, was a passenger. Counts one and three of the complaint set forth Peggy Bealle's personal injury claims against Nyden's and Weyerstrass, respectively. Counts two and four set forth Morris Bealle's claims against Nyden's and Weyerstrass, respectively, for medical expenses and loss of the services and consortium of his wife.

Jurisdiction is founded on diversity of citizenship, plaintiffs being Virginia citizens, defendant Weyerstrass (the only defendant served) being a Connecticut citizen, and the amount in controversy, in the case of each plaintiff, being in ex-

cess of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

Suit was first brought August 17, 1962 in the District Court for the Southern District of New York where personal service was effected upon defendant Weyerstrass only. Upon Weyerstrass' motion for summary judgment on grounds of improper venue and expiration of the Connecticut statute of limitations, Section 52–584, Judge Dawson on February 19, 1964 found venue improper and, on his own motion, pursuant to 28 U.S.C. § 1406(a), transferred the action to this District without prejudice to defendant's right to raise here the bar of the Connecticut limitation period.

Defendant Weyerstrass claims the bar of Section 52–584 as the sole ground for his summary judgment motion. Plaintiff opposes the motion on the grounds that (i) Section 52–584 does not apply to actions commenced in another jurisdiction within the limitation period of that jurisdiction and subsequently transferred to Connecticut, and (ii) even if Section 52–584 is applicable, plaintiffs' claim that defendant, by the conduct of his liability insurer, Lumbermens Mutual Casualty Company (Lumbermens), is estopped from raising the limitation defense presents a genuine issue of material fact unsuitable for summary adjudication.[1]

## STATUTE OF LIMITATIONS

 This Court must apply the statute of limitations which a Connecticut state court would apply.[2] Section 52–584 of the Connecticut General Statutes, uniformly characterized as a procedural limitation,[3] would be applied by a Connecticut state court to a claim founded on common law negligence.[4] Accordingly Section 52–584 must be applied by this Court where the claim, as here, is based on a "garden variety tort"[5] allegedly occurring in Connecticut.[6]

Section 52–584, in relevant part, provides that "No action to recover damages for injury to the person * * * caused by negligence * * * shall be brought but within one year from the date when the injury is first sustained or discovered, or in the exercise of reasonable care should have been discovered."

Plaintiffs stress that the statute expressly bars only actions "brought" after one year, not actions "maintained" after one year. It has been held, plaintiffs point out, that a diversity action in this Court is deemed "brought", for the purpose of tolling the predecessor of Section 52–584, upon filing a complaint in this Court.[7] Plaintiffs conclude from this that the statute should be construed to bar only the *commencement* in Connecticut of personal injury actions after one year and not to bar the *maintenance* in Connecticut of an action commenced in another jurisdiction, within the statute of limitations of that jurisdiction, and subsequently transferred here. Since this action was first commenced in the Southern District of New York within the three year New York limitations provision,[8] plaintiffs argue, the action is not barred by Section 52–584 upon transfer to this District.

1. Personal service in this District has not been made on defendant Nyden's Incorporated.

2. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Riccuiti v. Voltarc Tubes, Inc., 277 F.2d 809 (2 Cir. 1960).

3. Earnhardt v. Shattuck, 232 F.Supp. 845 (D.Vt.1964); Crampton v. D. V. Frione Co., 1 F.Supp. 989 (D.Conn.1932).

4. Thomas Iron Co. v. Ensign-Bickford Co., 131 Conn. 665, 668, 42 A.2d 145 (1945).

5. Clarke v. Pennsylvania Railroad Co., 341 F.2d 430, 432 (2 Cir. 1965).

6. Reisinger v. Cannon, 127 F.Supp. 50 (D. Conn.1954); Corrigan v. Clairol, Inc., 126 F.Supp. 791 (D.Conn.1954).

7. Reisinger v. Cannon, supra note 6; Glebus v. Fillmore, 104 F.Supp. 902 (D. Conn.1952).

8. New York CPLR § 214(5).

■ The statutory language, in the context in which the present question is raised, has never been construed by the Connecticut Supreme Court of Errors, nor by any Connecticut state court, so far as this Court has been able to ascertain. The Court, therefore, must "make its own determination as to what the state courts would probably do," [9] exercising "its independent judgment as to what the statute means, guided by analogous decisions, if any, and the court's own reasoning as to the intended public policy." [10]

The general purpose of statutes of limitations has recently been stated by the United States Supreme Court as follows: [11]

> "Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349 [64 S.Ct.

582, 88 L.Ed. 788]. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights."

By setting a one year limitation for personal injury actions, the Connecticut legislature [12] has prescribed that, as a matter of Connecticut public policy, such claims become stale one year after an injury is sustained or discovered or reasonably should have been discovered. The underlying theory of Section 52–584, in the view of the Supreme Court in *Burnett*, is that even if plaintiffs have just personal injury claims, it is unjust not to put defendants on notice to defend within one year.

The Supreme Court in *Burnett* found timely notice to defend was given in a FELA suit commenced in a federal court in Ohio after the expiration of the applicable three year limitation period, where an identical action, in which defendant was served with process, had been commenced within three years in an Ohio state court having jurisdiction and there dismissed for improper venue. The Court concluded that plaintiff, by filing a prior timely action and serving defendant with process, demonstrated the diligence which statutes of limitations were designed to insure, and, therefore, plaintiff should not be deprived of his rights by procedural technicalities inherent in laying proper venue.[13]

---

9. Riccuiti v. Voltarc Tubes, Inc., supra note 2, at 812.

10. 1A Moore's Federal Practice ¶ 0.309 [2], at 3327 (2d ed. 1965); Locke Manufacturing Companies v. United States, 237 F.Supp. 80, 85–86 n. 8 (D.Conn.1964); Masterson v. Atherton, 223 F.Supp. 407, 410 (D.Conn.1963), aff'd, 328 F.2d 106 (2 Cir. 1964); Hazlitt v. Fawcett Publications, Inc., 116 F.Supp. 538, 544 (D. Conn.1953).

11. Burnett v. New York Central Railroad Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).

12. The Connecticut Supreme Court of Errors similarly determined that one purpose of Conn.Gen.Stat. § 8324 (1949), the predecessor of Section 52–584, was

"to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." Vilcinskas v. Sears, Roebuck & Co., 144 Conn. 170, 174, 127 A.2d 814, 816 (1956).

13. Accord, Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

The Court recognizes that the decision in *Burnett* was in part prompted by a consideration to establish a nationally uniform rule with respect to tolling the statute of limitations in FELA cases—a consideration not present in the instant case. The Court finds, however, that the general principles underlying statutes of limitations, which the Supreme Court found applicable to FELA claims, are, to

Connecticut has made clear, by its Accidental Failure of Suit Statute,[14] its intent to prevent timely actions which have failed "for any matter of form," including improper venue,[15] from being time-barred merely because the limitation period expired pending failure of suit.

This Court recently decided, however, that a suit is timely within the meaning of the Connecticut Accidental Failure of Suit Statute only when it is commenced within the time limited by *Connecticut* law.[16]

Plaintiffs, by not bringing suit within the applicable one year limitation period of Section 52-584, failed to demonstrate the diligence which that statute, in the view of this Court, was designed to insure.

In so ruling, the Court rejects as mere semantics the distinction between the terms "maintained" and "brought" sought to be drawn by plaintiffs. The phrase, "no action * * * shall be brought," as used in Section 52-584, is construed by this Court to mean that no action shall be prosecuted in this Court—whether initially commenced here or maintained here upon transfer from another jurisdiction—unless, within the period prescribed by Section 52-584, the action has been commenced pursuant to Rule 3, Fed.R.Civ.P., in a court having jurisdiction.

The rule formulated by the Supreme Court in *Burnett*, which is designed to mitigate the harsh effect of statutes of limitations on diligent plaintiffs, presupposes that a prior timely action has been brought.[17]

This Court, having decided in the instant case that Connecticut law determines the timeliness of the prior action commenced in the Southern District of New York, concludes that it was not timely. Plaintiffs' action in this Court, therefore, is barred by Section 52-584, unless defendant, as plaintiffs urge, is equitably estopped from asserting that bar.

In view of the Court's holding that the timeliness of plaintiffs' prior action is determined by Connecticut law, it is not necessary for the Court to rule upon plaintiffs' claim that their prior action, as determined by New York law, was timely. To avert silence being construed as implied acceptance of plaintiffs' argument, the Court notes in passing that plaintiffs' original action commenced in the District Court for the Southern District of New York was not timely under New York law. Section 202 of the New York CPLR [18] provides:

"An action based upon a cause of action accruing without the state

---

the extent indicated in this decision, equally applicable in interpreting Section 52-584.

14. Conn.Gen.Stat. § 52-592 (1958).

15. Morgan v. Bicknell, 18 Conn.Supp. 439, 443 (Super.Ct.1953).

16. Mizell v. Welch, 245 F.Supp. 143 (D. Conn.1965).

17. The Supreme Court decision heavily relied upon by plaintiffs, Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), in no way detracts from this conclusion. *Goldlawr* involved a private anti-trust action for treble damages originally commenced in the District Court for the Eastern District of Pennsylvania within the applicable four year limitation period, 15 U.S.C. § 15b. 169 F.Supp. 677 (E.D.Pa.1958). No question of the timeliness of the original action was involved in the subsequent transfer to the Southern District of New York, nor in any proceeding thereafter. 175 F.Supp. 793 (S.D.N.Y.1959); 288 F. 2d 579 (2 Cir. 1961). No issue of competing statutes of limitations was involved; the four year statute of limitations applied in both the transferee and transferor jurisdictions. The principle formulated by the Supreme Court in *Goldlawr*, that personal jurisdiction over defendants is not a prerequisite to transfer by a district court under 28 U.S.C. § 1406(a), presupposes, as does the decision in *Burnett*, that a timely action, under the applicable statute of limitations, was commenced in the transferor court.

18. N.Y. CPLR § 202 carried forward in substance N.Y. Civil Practice Act § 13, which was in effect when the instant suit was commenced in the Southern District of New York.

cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

The cause of action involved here accrued in Connecticut and neither plaintiff claims New York citizenship.[19] A New York court, therefore, would have been governed in this case by the one year Connecticut statute of limitations.[20]

## EQUITABLE ESTOPPEL

Plaintiffs claim that defendant is equitably estopped from raising the bar of Section 52–584 by reason of representations made by representatives of Lumbermens, defendant's liability insurer, to plaintiffs' attorney, Emmet Leo Sheehan, of Washington, D. C. To prove these representations, plaintiffs rely on Sheehan's deposition and affidavits of plaintiffs and Sheehan. Sheehan's deposition is uncontroverted; for the purpose of this motion, defendant, upon oral argument, conceded the truth of Sheehan's testimony. Defendant contends that the evidence adduced from the affidavits and Sheehan's deposition, as a matter of law, does not support plaintiffs' claim of estoppel.[21] Plaintiffs, on the other hand, argue that this evidence at least raises a triable issue of material fact not susceptible of summary adjudication pursuant to Rule 56.

After the September 2, 1960 accident both plaintiffs were contacted by claims representatives of Lumbermens regarding the details of the accident and possible claim settlement. One representative informed Morris Bealle that Lumbermens was the liability insurer of the truck driven by defendant and that "This is one case we want to settle, because

we have no defense." (Affidavit of Plaintiffs, ¶¶ 5, 6).

Sheehan, whose practice of law in the District of Columbia for over 42 years included negligence cases (Deposition of Sheehan taken September 9, 1964—hereafter referred to as Deposition—pp. 3–4), was retained by plaintiffs January 8, 1961, at which time he extensively interviewed plaintiffs regarding the accident (Deposition, pp. 4–5; Affidavit of Plaintiffs, ¶ 7; Affidavit of Sheehan, ¶ 2).

In a claim letter dated January 9, 1961 Sheehan notified Lumbermens and Nydens that he had been retained by plaintiffs, that he considered liability to be absolute, but that he would be unable to discuss settlement until he conducted a thorough investigation (Deposition, pp. 5–6; Affidavit of Sheehan, ¶ 2). Mr. Martz, a representative of Lumbermens, telephoned Sheehan January 12, 1961 acknowledging receipt of the January 9 claim letter. Sheehan, in response to Martz's inquiry, stated that he did not then have documents to support Morris Bealle's claim, communicated by Bealle to Lumbermens prior to Sheehan's retainer, that $5,000 had already been spent by the Bealles as a result of the accident. Sheehan said he would obtain the documents and forward them to Lumbermens. Martz and Sheehan agreed that it was too early to ascertain special damages inasmuch as Mrs. Bealle was still under doctor's care (Deposition, pp. 6–9).

Sheehan first became aware of the one year Connecticut limitation period on approximately January 25, 1961 when he received a letter dated January 24, 1961 from Government Employees Insurance Company (GEICO), plaintiffs' collision insurer, stating that Lumbermens had indicated it would honor GEICO's subrogation claim once the personal injury claim was disposed of, and, if this should cause GEICO's subrogation claim to remain pending beyond the one year limita-

19. Cf. Clarke v. Pennsylvania Railroad Co., supra note 5.

20. Colello v. Sundquist, 137 F.Supp. 649 (S.D.N.Y.1955), aff'd mem. 229 F.2d 737 (2 Cir. 1956).

21. Defendant's Memorandum of February 3, 1965, pp. 10–11.

tion period, Lumbermens would waive the statute of limitations as to GEICO's claim (Deposition, pp. 13–15, 35).

On March 3, 1961 Sheehan, in a telephone conversation with P. B. Courtney, a representative of Lumbermens, acknowledged receipt of Lumbermens' request for medical bills and special damages (Deposition, p. 10).

On May 3, 1961 Sheehan had a telephone conversation with Mr. Oelberg, another representative of Lumbermens, regarding which Sheehan testified as follows:

"Mr. Oelberg, Republic 7–3133, Lumbermens Mutual Casualty Company, 1301 H Street—'H Northwest'—I didn't have the word 'Street' in there —'1301 H Northwest,' wants medicals and specials. Told him that injuries involved, not certain how it would turn out. Stated there was no question about liability and he had advised Bealle this. Told me not to bother sending in medicals till I knew pretty well what the situation was. His company in no hurry to make settlement without knowing pretty well what the back injury situation would be." (Deposition, p. 11).

\* \* \* \* \*

"We had quite a conversation. I told him that over the years I had dealt with the Lumbermens Mutual in a number of different cases and always found them a bunch of square-shooters, and that I didn't want any more than the case was worth and I didn't want to be foisting injuries on them that didn't exist and I didn't want to settle the case without knowing pretty well how the back injuries would turn out, and he reassured me that I had absolutely nothing to worry about. They knew the liability was absolute, they wanted to pay what was fair, and that

whenever I was in a position to tell them with a degree of definiteness and certainty what the injuries and resulting disability would be, that I should get in touch with him further and we would see what we could work out." (Deposition, p. 12).

Sheehan never discussed specifically the subject of the statute of limitations with any representative of Lumbermens; he assumed, however, from his May 3, 1963 telephone conversation with Oelberg that Lumbermens would not invoke the statute of limitation (Deposition, pp. 15–16, 38). In his prior dealings with Lumbermens, Sheehan did not recollect any case in which he permitted a statute of limitations to expire without first obtaining a written waiver from Lumbermens. He had no standard course of dealing with Lumbermens concerning statutes of limitations (Deposition, pp. 16–17).

Following the May 3, 1961 conversation with Oelberg, Sheehan had no further conversations with representatives of Lumbermens (Deposition, pp. 17–18).

Sheehan first learned that Lumbermens would not waive the statute of limitations in connection with GEICO's subrogation claim in October 1961 through a telephone conversation with a representative of GEICO (Deposition, p. 18).

 The doctrine of equitable estoppel in Connecticut "rests on the misleading conduct of one party to the prejudice of the other." [22] The purpose of the doctrine is "not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." [23]

 Before equitable estoppel may be invoked under Connecticut law, two essential elements must be established: "The party [sought to be estopped] must

22. Franke v. Franke, 140 Conn. 133, 137, 98 A.2d 804 (1953); Linahan v. Linahan, 131 Conn. 307, 327, 39 A.2d 895 (1944); MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 548, 173 A. 783 (1934).

23. Basak v. Damutz, 105 Conn. 378, 384, 135 A. 453, 455 (1926); Canfield v. Gregory, 66 Conn. 9, 17, 33 A. 536 (1895).

do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." [24]

 The party claiming estoppel, moreover, "must show that he has exercised due diligence to know the truth and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." [25] Equitable estoppel is not available to a party who "conducts himself with a careless indifference to means of information reasonably at hand, or ignores highly suspicious circumstances which should warn him of danger or loss." [26]

 The Court, applying the foregoing principles of equitable estoppel to the conduct of the parties [27] here involved, concludes that, as a matter of law, plaintiffs' claim of estoppel is invalid.

 No ordinarily prudent attorney could rely reasonably [28] on the representations made by Lumbermens as indicating the insurer intended to waive the one year limitation period applicable to plaintiffs' personal injury claim. [29] At no time during the course of negotiations between Lumbermens and Sheehan did any representative of Lumbermens mention the statute of limitations, much less represent that Lumbermens intended to waive it. Nor was there any request, express or implied, for delay or forbearance in bringing suit. Under Connecticut law, application of the doctrine of equitable estoppel is restricted to conduct or representations which were "directed to the very point of obtaining the delay, of which [the party to be estopped] afterward seeks to take advantage by pleading the statute." [30]

Lumbermens' representations, taken in the light most favorable to plaintiffs, merely indicated that it admitted liability and would attempt to arrive at a

24. Fawcett v. New Haven Organ Co., 47 Conn. 224, 227 (1879). Accord, Spear-Newman, Inc. v. Modern Floors Corp., 149 Conn. 88, 91, 175 A.2d 565 (1961); State ex rel. DeGregorio v. Woodruff, 135 Conn. 31, 36, 60 A.2d 653 (1948); Tradesmens National Bank v. Minor, 122 Conn. 419, 424, 190 A. 270 (1937).

25. State v. American News Co., 152 Conn. 101, 114, 203 A.2d 296, 303 (1964); Spear-Newman, Inc. v. Modern Floors Corp., supra note 24; Myers v. Burke, 120 Conn. 69, 76, 179 A. 88 (1935).

26. Second National Bank of New Haven v. Dyer, 126 Conn. 101, 111, 9 A.2d 503, 507 (1939).

27. Under Connecticut law, equitable estoppel, as contrasted with waiver, involves the conduct of both parties. MacKay v. Aetna Life Ins. Co., supra note 22.

28. Reliance upon the conduct asserted as the basis for estoppel must be reasonable. Bergeron v. Mansour, 152 F.2d 27, 30 (1 Cir. 1945); Delson v. Minogue, 190 F.Supp. 935, 938 (E.D.N.Y.1961); Owens v. Doyle, 152 Conn. 199, 207, 205 A.2d 495 (1964); Second National Bank of New Haven v. Dyer, supra note 26; Flaxman v. Capital City Press, Inc., 121 Conn. 423, 431, 185 A. 417 (1936).

29. This conclusion is reached with full realization that Lumbermens represented to GEICO it would waive the statute in connection with GEICO's subrogation claim for damage to plaintiffs' automobile, which representation was communicated to Sheehan in the letter from GEICO dated January 24, 1961 (supra p. 92). The property damage and personal injury claims were separate and distinct. Lumbermens' proposal to waive the statute in connection with honoring GEICO's subrogation claim was premised on first disposing of the personal injury claim as to which there was no mention of waiver.
Lumbermens representations to GEICO concerning the subrogation claim being wholly irrelevant to the issue of estoppel with regard to the personal injury claim here involved, the Court finds untenable plaintiffs' suggestion that GEICO should be considered plaintiffs' agent for the purpose of determining whether Lumbermens' conduct estops defendant from raising the bar of Section 52–584 as to the personal injury claim.

30. Lippit v. Ashley, 89 Conn. 451, 480, 94 A. 995, 1005 (1915).

fair settlement at a later time when furnished with a more accurate estimate of plaintiffs' special damages. Oelberg told Sheehan that Lumbermens "was in no hurry to make a settlement" (Affidavit of Sheehan ¶ 3; Deposition, p. 11) and that when Sheehan was in a position accurately to estimate the extent of injuries and disability, he should contact Oelberg and "we would see what we could work out" (Deposition, p. 12). The matter of damages, prior thereto or thereafter, was never seriously negotiated. Sheehan, moreover, aware of the expiration date of the Connecticut statute, received no further communications from Lumbermens, nor apparently did he attempt to reach Lumbermens during the four month period prior to the expiration of the statute which followed his May 3, 1961 telephone conversation with Oelberg.[31] An insurer's admission of liability and proposal to negotiate at some future time a fair settlement figure can not reasonably be relied on by an attorney experienced in negligence work, under the circumstances of this case, as obviating the necessity of bringing a timely suit.

In holding as a matter of law that Lumbermens' conduct could not reasonably be relied upon as indicating an intent to waive the one year limitation and, therefore, the misleading conduct required for application of the Connecticut doctrine of equitable estoppel[32] was lacking here, the Court realizes it is applying a more stringent standard of reasonable reliance than that applied in Delson v. Minogue[33] and Bergeron v. Mansour,[34] cases cited by plaintiffs. Although Lumbermens did communicate preliminarily with plaintiffs directly,[35] this is not a case where the insurer dealt *exclusively* with a layman (as in *Bergeron*) or primarily with a layman (as in *Delson*) during the running of the applicable statute of limitations.

Equitable estoppel, in the absence of a genuine issue of material fact, is susceptible of summary adjudication.[36] The Court, having considered the pleadings, the affidavits, the Sheehan deposition and all other papers on file, and having drawn all inferences of fact in favor of plaintiffs,[37] holds that plaintiffs' claim of estoppel presents no genuine issue of material fact and that, as a matter of law, defendant is not estopped from raising the bar of the statute of limitations.

Defendant Weyerstrass' motion for summary judgment is granted.

31. Some courts, in applying the doctrine of equitable estoppel, have adopted the view that where the conduct claimed as the basis for estoppel has ceased long enough prior to the expiration of the statute of limitations to afford plaintiff ample time to commence a timely action, plaintiff cannot invoke the doctrine. Howard University v. Cassell, 126 F.2d 6, 12 (1941), cert. denied, 316 U.S. 675, 62 S.Ct. 1046, 86 L.Ed. 1749 (1941); La Porte v. United States Radium Corp., 13 F.Supp. 263, 274 (D.N.J.1935). See Annot., 24 A.L.R.2d 1413, 1423 (1952) and Annot., 130 A.L.R. 8, 19 (1941).

No Connecticut court, so far as this Court has been able to ascertain, has applied this principle in determining a question of equitable estoppel. This Court, rather than relying on such principle, finds that the absence of any further communication following the telephone conversation with Oelberg, during which Sheehan had ample time to commence suit, made it all the more unreasonable for Sheehan to rely on the Oelberg conversation as indicating that Lumbermens would waive the one year limitation period. In short, the "due diligence to know the truth" required by Connecticut law of the party seeking to establish equitable estoppel (supra note 25 and accompanying text) was not exercised here.

32. Supra note 22 and accompanying text.

33. Supra note 28.

34. Supra note 28.

35. Supra, p. 9.

36. 6 Moore's Federal Practice ¶ 56.17 [21], at 2210 (2d ed. 1953) and cases there cited.

37. 6 Moore's, op. cit. supra note 36, ¶ 56.-15 [3].