NATHAN SCHIESEL *vs.* THE S. Z. POLI REALTY COMPANY.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 25th—decided July 16th, 1928.

*George E. Beers* and *Irving G. Smith,* for the appellant (plaintiff).

*Benjamin Slade,* with whom was *Louis Weinstein,* for the appellee (defendant).

WHEELER, C. J.   The case was tried to the jury. The plaintiff offered evidence to prove: That he, from October, 1923, to October, 1925, conducted a business in women's and children's clothing in a store adjoining the defendant's theatre and separated from it upon

its easterly side by a brick wall which was the westerly side of the lobby of the theatre. During plaintiff's occupancy of this store for a year and up to October 1st, 1924, no steam or water escaped into his store causing damage to his stock of goods. The store was heated by an ordinary coal stove and a gas heater, upon which he kept a small vessel containing water.

The defendant heated its premises by steam through pipes connected with a boiler in its cellar. One of these pipes ran from a boiler two hundred and fifty feet from the line of the plaintiff's store to a radiator recessed about eight inches in the wall between plaintiff's store and defendant's premises and being about fifty feet from the front of each.

In the summer of 1924, the defendant changed its method of generating steam from coal to oil by attaching to the boiler suitable apparatus.

In November, 1924, for the first time, dampness, moisture and water appeared in the premises of the plaintiff through the passage of the moisture and water from the premises of the defendant through this wall.

The plaintiff made frequent complaints to the defendant of this. The steam oozed through the wall to a point opposite the recessed radiator, condensed on the wall of the store and in consequence through the defendant's negligence the steam and water injured the fabrics in the store.

The defendant offered evidence to prove: The wall between the radiator in defendant's lobby and the face of the wall in plaintiff's store was between twelve and sixteen inches thick. Upon the first complaint of the plaintiff an immediate examination was made of the theatre apparatus and especially of the radiator, and no steam was seen escaping from it, but the defendant immediately shut off the supply into the steam pipes

feeding the radiator and kept it continuously shut off during the winter seasons of 1924 and 1925, and up to the date of this action, April 20th, 1925.

About March, 1925, plaintiff again claimed that dampness in the store was caused by escaping steam; an immediate, thorough and complete inspection and examination were again made, and the wood wainscoting removed in plaintiff's store opposite the location of the radiator, and thereby the brick wall was exposed at the place where the wainscoting was removed and found to be perfectly dry and no steam was found escaping from the theatre or through the wall or otherwise into plaintiff's store. There was at no time any sign in the lobby of the theatre of any escaping steam from this radiator which was at all times visible from the lobby through a perforated grill covering it. It was impossible for steam to enter plaintiff's store as it would have to pass through this brick wall. If any steam did escape it would first be visible through the grill and in the theatre lobby.

In plaintiff's store near the place where he claimed steam entered his store there was a large mirror which at no time disclosed a vapor covering or dampness, and at no time were there any signs on the floor or walls of the store of the entry of any steam from this radiator.

During the winter months of 1924, over forty-four hundred cubic feet of gas were consumed per month in plaintiff's gas heater and about the same quantity during the season of 1925. At the time of the first complaint by the plaintiff a careful and exhaustive examination of this store was made by the defendant, which disclosed water beads on the metal ceiling and walls of the store, but no steam was found escaping into the plaintiff's premises.

For every five hundred cubic feet of gas burned in the plaintiff's gas heater, which had no chimney, there

was created fifteen quarts of water, which was evidenced by water beads on the metal ceiling and walls of the plaintiff's store, and this was not due to any act of omission or commission on the part of the defendant.

The plaintiff requested the court to charge: "If you find that the steam came through the wall from the premises of the defendant, you may from the fact draw the inference that the defendant was negligent," etc.

The plaintiff invoked in this request the doctrine of *res ipsa loquitur,* and claimed in argument that because of its applicability he had made out a prima facie case and that the burden of meeting and disproving this was thereby cast upon the defendant, but that the court, throughout the charge, ignored this doctrine and instructed the jury that the plaintiff was bound to prove the material allegations of his complaint.

Experience has demonstrated that when certain facts are proven, ordinarily a certain inference follows, and that in the absence of their explanation or rebuttal, reliance may be placed upon the probative strength of the inference, and from it a presumption of law attaching to it certain legal consequences will arise. The presumption is neither the fact nor the inference, but, as Thayer says, "the legal consequences of it." It is not of itself evidence. It merely calls for evidence in explanation or rebuttal of the inference upon which the presumption rests. The presumption stands or falls with the inference. If no explanation or rebuttal is forthcoming the inference remains and the presumption obtains. But if either is made, and in a degree satisfying the court's requirement, the inference is met, the presumption no longer exists and the decision must rest upon the evidence, free from the effect of the presumption. In the first instance the plaintiff satisfies the burden of proving the essentials

of his case by proof out of which the inference springs and upon which the presumption of law arises. It casts upon the defendant the duty of explaining or rebutting the inference. When the defendant has made this proof the plaintiff must satisfy the burden of proof upon him by evidence.

In a negligence action, occasionally, the proof of the occurrence of the injury will justify the inference that it could not in the general experience have happened unless there had been a want of due care. Out of this inference of fact grows a presumption of law that the injuring party will be held responsible in damages for the consequences of this occurrence unless he shall explain or rebut this inference by evidence which meets the requirement of the court.

The proof of facts creating the inference and raising the presumption casts upon the party charged the duty of producing such evidence of explanation or rebuttal.

When he has done this the plaintiff may introduce evidence in rebuttal of defendant's explanation or rebuttal. The burden of proof rests throughout the case upon the plaintiff. He may meet it by proof of facts giving rise to the inference creating the presumption of law. When the defendant has overcome this inference by proof in explanation or rebuttal, the plaintiff must overcome this by evidence in order to sustain the burden of proof upon him. A situation justifying this inference is denominated the doctrine of *res ipsa loquitur*—the thing speaks for itself. The conditions justifying the doctrine are: (1) that the situation, condition or apparatus "must be such that in the ordinary instance no" injury would result "unless from a careless construction, inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party

charged with neglect; (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." *Stebel* v. *Connecticut Co.,* 90 Conn. 24, 26, 96 Atl. 171; Thayer's Preliminary Treatise on Evidence, 314; 4 Wigmore on Evidence (1st Ed.) §2509.

We apply this doctrine and these conditions to the case before us. No injurious consequence would ordinarily follow through steam escaping from a radiator and penetrating a wall of twelve to sixteen inches thickness, unless there was a careless construction, user or inspection of the radiator and at the time of the resulting injury these were within the control of the party charged and the injury was not materially contributed to by the voluntary action of the injured party.

Upon the evidence submitted by the plaintiff the jury might have found all of these conditions present. If they so found, the jury might draw the inference that the injury occurred probably through the negligence of the defendant. The legal consequence of such inference when drawn would cast upon the defendant the duty of explaining or rebutting this inference.

The defendant attempted to do this by offering evidence tending to show that no steam could have escaped, or did escape, from this radiator into plaintiff's store by showing the condition of the radiator and of the wall in the store opposite the radiator and of the mirror in the store.

It also offered evidence that immediately after complaint of the escaping steam it shut off and thereafter kept shut off in the winter season steam from entering the radiator.

In addition the defendant offered evidence tending to show that the cause of any moisture in plaintiff's

store which may have damaged his goods was due to the gas heater which plaintiff maintained in his store. Manifestly this evidence may have satisfied the requirement of explanation or rebuttal of this inference.

So far as the record shows the plaintiff did not attempt to offer evidence in contradiction of defendant's explanation or rebuttal of the inference created out of the facts of the occurrence. If the plaintiff had offered such evidence, in either case the question for the jury was as to whether the plaintiff had sustained the burden of proving his case.

The court was right in its instruction that the burden of proving the negligence alleged by him was upon the plaintiff. It was right in submitting the issue of negligence to the jury. It was right in refusing to charge that the jury were at liberty to draw the inference of negligence from the proof of the occurrence alone, since evidence in explanation or rebuttal of any inference from this proof had been offered which the jury might have found satisfactory. It was not harmful error for the court to refuse to state to the jury the true application of the *res ipsa loquitur* doctrine, first, because the plaintiff had not properly requested such instruction, and second, because the verdict of the jury conclusively established the fact that they found the issue of negligence, irrespective of this inference, in favor of the defendant.

The claim that the court instructed the jury that all who inspected the wall saw no steam oozing from it is contradicted by the charge which fairly left this issue to the jury. The jury could not reasonably have understood, in view of the rest of the instruction upon this subject, that, when the court said, "those who inspected it (the wall) say they saw no steam," this included all those who had testified concerning this

subject. Obviously, it referred to the two inspections made by the defendant after complaints by plaintiff. The criticism of the charge for unfair treatment of the testimony of the plaintiff and his witnesses is without merit. The right of comment by the court upon the evidence is within its discretion, so long as this is done with fairness to the evidence, the witnesses and the cause. The purpose of the charge is to help the jury to reach a just conclusion. To this end it should give the jury practical guidance by applying the law to the facts in issue in such way as to give them an understandable criterion to go by. It should discuss the facts in evidence when necessary, in such way as to enable the jury to understand the real issues of the case. It should not permit false or unsound claims or untrustworthy evidence, liable to affect the result, to pass unnoticed. It should, where it deems it necessary to secure a right conclusion, express its opinion upon the facts while leaving their ultimate determination to the jury. *Crotty* v. *Danbury,* 79 Conn. 379, 387, 65 Atl. 147; *Smith* v. *Hausdorf,* 92 Conn. 579, 581, 103 Atl. 939.

Error is assigned in the charge in reference to a tax list in evidence, as having been sworn to by the plaintiff, not because of its bearing upon the question of the value of the goods damaged, as the verdict was for the defendant, but because of its effect upon the credibility of the plaintiff as a witness. The court charged: "You may consider that in connection with his testimony and as to the credence which should be given the plaintiff's testimony. And in that you may consider whether any person who wilfully or knowingly violates an oath or makes oath to some false statement at one time—whether their statement under oath would be worthy of full credence, given at another time."

"The 'owner's valuation' is not required in the oath

prescribed by law." *Pope Foundation, Inc.* v. *New York, N. H. & H. R. Co.*, 106 Conn. 423, 427, 138 Atl. 444; *East Granby* v. *Hartford Electric Light Co.*, 76 Conn. 169, 172, 56 Atl. 514; General Statutes, §§1137, 1138.

The court thus injected a principle of law which was inapplicable. The plaintiff's testimony was necessarily vital to his case. The jury may under this instruction have found that the plaintiff had sworn falsely as to the value of his goods, and because of that, discredited his entire testimony. The instruction cannot be held to have been harmless.

The court was in error in charging in accordance with defendant's request that the defendant was entitled to notice of any defect in its heating system and proper and reasonable time to repair it. The negligence was not dependent upon the giving to defendant of notice of the defect by the plaintiff. But the error was harmless as the court pointed out that this rule of law was not applicable in view of the facts in evidence.

The plaintiff on rebuttal offered in evidence gas bills paid by him during the year 1923. The gas bill for the period between September 17th and October 17th was upon objection excluded because it did not upon its face show anything; the rest of these bills were excluded because not proper rebuttal, being unconnected with conditions existing in 1924. The statement of the ruling is wholly inadequate in failing to comply with Rules of the Supreme Court. Practice Book, p. 308, §6. By reference to the statement of facts which defendant offered to prove it appears that the defendant claimed to have proved that the plaintiff heated his store in part by a gas heater without a chimney and that the dampness in plaintiff's store and the water beads

upon the ceiling and walls were due solely to the vapor created by the consumption of gas in this heater.

The plaintiff had offered evidence to prove that during his occupancy of the store there was no escape of water into his premises and no damage done therefrom to his goods, but that after defendant changed the method of generating heat for its premises adjoining this store, from coal to oil, the dampness, moisture and water appeared in his premises damaging his goods.

The consumption of gas by plaintiff during the period prior to the change of defendant from coal to oil would tend to contradict defendant's theory of the cause of the damage done to the plaintiff's goods provided it showed about the same consumption of gas prior to this change as before, and at the same time would tend to corroborate the plaintiff's theory of the cause. Clearly it was legitimate and important rebuttal. The gas bills which were marked in evidence exhibits U and Y, are in the ordinary form of gas bills and understandable without extraneous evidence. None of the objections of counsel to this evidence was tenable.

There is error and a new trial is ordered.

In this opinion the other judges concurred.