PHOENIX MUTUAL LIFE INSURANCE COMPANY *v.*
PHYLLIS A. BRENCKMAN ET AL.

PHYLLIS A. BRENCKMAN *v.* PHOENIX MUTUAL
LIFE INSURANCE COMPANY

KING, MURPHY, MELLITZ, ALCORN and BORDON, Js.

Argued March 10—decided May 4, 1961

*Bruce W. Manternach,* with whom was *Lee C. Fielden,* for the appellant (plaintiff in the first case and defendant in the second).

*John S. Murtha,* with whom was *William M. Cullina,* for the appellee (defendant in the first case and plaintiff in the second).

MURPHY, J. These two cases were tried together and the appeals have been combined. Both actions arise out of a retirement income policy issued by the Phoenix Mutual Life Insurance Company to Wayne D. Brenckman on February 28, 1956. The policy also provided a death benefit of $24,000 payable to Phyllis A. Brenckman, wife of the assured as beneficiary, and was incontestable after two years. Brenckman died December 31, 1957. The company refused to pay the death benefit to Mrs. Brenckman. In the first case, which is an action in equity against Mrs. Brenckman individually and as executrix of her husband's estate, the company asks a judgment rescinding the policy and declaring it void on the ground that the assured made false

statements of material facts in his application for insurance, on which the company relied in issuing the policy. The issues of fact in this equitable action were tried to the jury, which answered two interrogatories. General Statutes § 52-218; Practice Book §§ 149, 150. The court rendered judgment for Mrs. Brenckman as beneficiary in accordance with the jury's answers. The second case is an action by Mrs. Brenckman as beneficiary to recover the death benefit provided for in the policy. The jury returned a verdict for her. The company appealed from both judgments.

Many of the facts in these cases are not in dispute. In November, 1955, the company issued a retirement income insurance policy to Brenckman after he had passed a medical examination performed by Dr. Daniel Marshall, who examined for this and other companies. The insurance had been solicited and sold by Jerome E. Howard, an agent of the company, who arranged for the physical examination. Dr. Marshall submitted a special heart report to the company in which he stated that Brenckman's heart was normal. About three months later, Howard sought to sell another retirement income policy to Brenckman. On February 28, 1956, Dr. Marshall made another examination of Brenckman, in which an electrocardiogram was taken, found that Brenckman had heart disease, and so advised Howard. Howard, after talking with Brenckman, who disagreed with Dr. Marshall's findings, arranged for a further physical examination of Brenckman on the same day. That examination was conducted by Dr. Raymond R. Marsh, who also examined for the company. Dr. Marsh heard a heart sound which he did not consider significant, but he noted it in his report to the company. He

found Brenckman satisfactory for insurance purposes. Brenckman did not tell Dr. Marsh about Dr. Marshall's examination and his findings. In response to questions put by Dr. Marsh, Brenckman replied that he had never had heart trouble, shortness of breath, an electrocardiogram or any physical examination which disclosed any disorder or abnormal physical condition. His answers were written on the application by Dr. Marsh. Brenckman then signed the application, certifying to the truth of the answers he gave. Howard, in his report to the company, recommended issuance of the policy and stated that a special heart report was required. No special heart report was obtained by the company. On March 12, 1956, Brenckman signed an amendment to his February 28 application in which it was stated, "I have had no symptoms, diseases or disorders for which I have sought treatment or advice; and . . . I am now in good health so far as I know and believe." Brenckman had, however, been treated on March 2 and 6 by Dr. Marshall for his heart condition and was taking digitalis. On February 28, he had been told by Dr. Marshall that he had heart disease and needed treatment.

In its request for a finding and draft finding, the company included in its claims of proof a number of paragraphs of facts which it claimed it had offered evidence to prove and had proved, but the court did not include them in the finding. Error is assigned in their omission. Where a party seeks additions to his own claims of proof in a case tried to the jury, the additions should be made if they are material and are supported by the evidence. *Castaldo* v. *D'Eramo,* 140 Conn. 88, 93, 98 A.2d 664. Without the additions to which the company is entitled, it is impossible to test the claimed errors in

the charge. The finding is corrected by adding a sentence, "At that time the assured knew that he was undergoing treatment for heart disease," to paragraph 3, and also by adding paragraphs 13, 14, 16, 17, 18, 20, 23, 29 and 30 of the draft finding to the company's claims of proof.

The company claimed that until Brenckman filed a claim for total disability benefits under the policy shortly before he died, it had no actual knowledge of the heart condition disclosed by Dr. Marshall's examination, since neither Dr. Marshall nor Howard had conveyed that information to the company. The beneficiary maintained that both Dr. Marshall and Howard were agents of the company, that any information they acquired was knowledge of the company, and that if the information was not actually transmitted to the company, it was imputed to it because of its agents' knowledge. In a rather nebulously worded special defense in the first case, Mrs. Brenckman sought to plead waiver by the company of the misrepresentations in the application as amended. The trial court treated waiver as being sufficiently pleaded, and we are inclined to follow that interpretation, though a more definitive pleading would have better served the purpose. Where the facts are sufficiently set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged. *Lee* v. *Casualty Co.*, 90 Conn. 202, 209, 96 A. 952.

In the first case, the court propounded two interrogatories to be answered by the jury. In response to the first interrogatory, the jury replied that Brenckman had made material misrepresentations and omissions in his application, or the amendment to his application, for the policy in question. The second interrogatory was phrased: "Do you find

that the Phoenix Mutual Life Insurance Company did waive or is estopped from raising the defense or claim of misrepresentation or omission as instructed you by the court in its charge?" The jury answered, "Yes." Estoppel as a defense had not been pleaded by the beneficiary. It did not have to be. *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 195, 148 A.2d 554. In her claims of proof, the beneficiary claimed that she had offered proof of, and had proved, waiver and estoppel. But nowhere in the charge was the jury given a definition of estoppel, nor were they apprised of the situation in which estoppel would be applied. Such an instruction, though it had not been requested, was essential, especially since the word "estopped" was used in the second interrogatory. *Pietrycka* v. *Simolan,* 98 Conn. 490, 499, 120 A. 310. Where the court in the charge referred to waiver or estoppel, it treated them as being synonymous, and while it defined waiver, it did not define estoppel, with the result that the jury were called on to apply a legal doctrine of which they could not be expected to be cognizant. There is a real distinction between waiver and estoppel, as was pointed out in *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 A. 783. We need not repeat it here. The absence of an instruction as to what an estoppel is and when it applies constitutes reversible error under the claims of proof in this case. Furthermore, the company has assigned error, among other errors assigned, in that part of the charge in which the court was attempting to instruct the jury concerning the exceptions, in fraud cases, to the general rule imputing to an employer the knowledge which an agent has obtained. Under the company's claims of proof, it was essential that the court define fraud for the jury, but that was not

done. *Boardman* v. *Burlingame,* 123 Conn. 646, 656, 197 A. 761; see *McCaskey Register Co.* v. *Keena,* 81 Conn. 656, 658, 71 A. 898.

In our review of the court's charge and the assignments of error directed to it, it becomes apparent that the charge could not have adequately instructed the jury on the principles of law involved in the issues and their application to the respective and conflicting claims of the parties. The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case. It should be a succinct statement of the legal principles involved, with a sufficient reference to the claims of the parties so that the jury can appreciate the bearing of those claims on the facts. Maltbie, Conn. App. Proc. § 74. There were but two references to the claims of the parties. One pertained to the claim of the beneficiary that Dr. Marshall acted as the agent for the company in making the physical examination on February 28, 1956, and that the knowledge which he acquired, and which Howard obtained from him, constituted knowledge of the company through its two agents and precluded the company from asserting its defense that the policy had been obtained through misrepresentation by Brenckman. The other reference related to the claim of the beneficiary as to the part played by Dr. Marsh in his examination of Brenckman and the significance of his report to the company that he detected a heart sound. The court then charged in general terms concerning agency and the other principles it considered material to the issues. It made no reference to the claims advanced by the company or to the application of legal principles to them. "The purpose

of the charge is to help the jury to reach a just conclusion. To this end it should give the jury practical guidance by applying the law to the facts in issue in such way as to give them an understandable criterion to go by." *Schiesel* v. *Poli Realty Co.*, 108 Conn. 115, 124, 142 A. 812.

There is error in both cases, the judgments are set aside and new trials are ordered.

In this opinion Bordon, J., concurred; King, J., concurred in the result; Mellitz and Alcorn, Js., dissented.