JOHN M. NOVELLA *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

Argued June 14—decided July 27, 1972

*John J. Hunt,* for the appellant (plaintiff).

*Edward N. Shay,* for the appellee (defendant).

MacDonald, J. This appeal arose out of an action against the Hartford Accident and Indemnity Company, an automobile liability insurer, hereinafter referred to as the defendant, brought by the plaintiff John M. Novella, a judgment creditor of the defendant's insureds, Russell Novella and Joseph Novella, to recover the amount of a judgment obtained for personal injuries sustained in a motor vehicle accident. The action was brought pursuant to General Statutes § 38-175, which provides for the subrogation of a judgment creditor to all the insured's rights against the defendant insurer. The defendant interposed three special defenses based on clauses in the insurance policy itself, namely, that (1) the policy excludes coverage for injuries to an employee of the insureds arising out of and in the course of his employment; (2) the policy excludes coverage for any obligation for which the insureds may be liable under the Workmen's Compensation Act; and (3) the insureds breached a clause requiring their cooperation. The issues were submitted to the jury which returned a verdict for the defendant. Following a denial of the plaintiff's motions to set aside the verdict and for judgment notwithstanding the verdict, the trial court rendered a judgment for the defendant. From the judgment rendered, the plaintiff has appealed to this court assigning as error, inter alia: the denial of his motions to set aside the verdict and for judgment notwithstanding the verdict; the failure to include certain requests in the charge to the jury and the inclusion therein of portions claimed objectionable; in finding or refusing to find facts set forth in the claims of proof; and in rulings made during the trial.

We will consider, first, error assigned in the failure of the trial court to set aside the verdict and in denying the plaintiff's motion for judgment notwithstanding the verdict. "The same principles are to be applied in the review of the court's action on each motion. Maltbie, Conn. App. Proc. § 208." *Greene* v. *DiFazio,* 148 Conn. 419, 420, 171 A.2d 411. In reviewing the decision of the trial court, "we consider the evidence in the light most favorable to the sustaining of the verdict. *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748; *Kazukynas* v. *N. C. Casciano & Sons, Inc.,* 149 Conn. 1, 2, 174 A.2d 796; Maltbie, Conn. App. Proc. § 189. The court's action is tested by the evidence contained in the appendices to the briefs. Practice Book §§ 716, 718, 720–21; *Smith* v. *Housing Authority,* 144 Conn. 13, 14, 127 A.2d 45; Maltbie, Conn. App. Proc. § 185, p. 227." *Kelly* v. *Bliss,* 160 Conn. 128, 130, 273 A.2d 873; *Kostyal* v. *Cass,* 163 Conn. 92, 94, 302 A.2d 121; *Lewis* v. *Kasimer,* 153 Conn. 13, 15, 211 A.2d 837. If the jury could reasonably have reached their conclusion the verdict must stand. *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141. "The concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony, is a powerful argument for sustaining the action of the trial court. *Giambartolomei* v. *Rocky DeCarlo & Sons, Inc.,* 143 Conn. 468, 474, 123 A.2d 760." Ibid.; *Trani* v. *Anchor Hocking Glass Corporation,* 142 Conn. 541, 545, 116 A.2d 167; *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216.

From the evidence presented in the appendices to the briefs and taken in the light most favorable to the sustaining of the verdict, the jury reasonably could have found the following facts: Russell A.

Novella and his brother, Joseph Novella, were part-
ners who operated a junk business dealing in scrap
metal and paper. Some of their trucks, including a
1952 International rack-body truck, frequently were
used in connection with paper drives conducted by
various organizations. In connection with such
drives, one or more of the trucks customarily would
be left at the headquarters of the organization con-
ducting the drive where the organization's workers
would load the truck with paper and it then would
be brought back to the scrap yard which would pay
the organization for the paper and then process and
sell it for a profit. John Novella, the plaintiff, son
of Russell Novella and nephew of Joseph Novella,
was a full-time employee at the scrap yard on the
date of the accident. Prior to the accident, the plain-
tiff drove the scrap yard trucks as part of his em-
ployment and operated the 1952 International about
90 percent of the time.

On Saturday, May 19, 1962, Russell Novella told
the plaintiff to drive the 1952 International to Maho-
pac for a paper drive to be held there. This would
save Russell Novella from having to do it himself
on the following day, Sunday. It was stipulated
that on the way to Mahopac, the 1952 International,
which the plaintiff was driving, went off the road
and crashed, severely injuring the plaintiff.

At the time of the accident, the scrap yard had
no workmen's compensation insurance, but it did
have an automobile liability insurance policy issued
by the defendant. This policy contained, inter alia,
two pertinent exclusionary clauses which stated that
the policy did not apply (1) to bodily injury to any
employee of the insured arising out of and in the
course of employment by the insured, and (2) to
any obligation for which the insured or any carrier

as his insurer may be held liable under any workmen's compensation law.[1]

On January 8, 1963, the plaintiff sent a letter to the defendant alleging negligence on the part of the insureds. On January 16, Joseph Novella gave a signed statement to the effect that he had knowledge of some minor deficiencies on the truck in question and that the plaintiff drove that truck at least 90 percent of the time. On January 16, Russell Novella gave a signed statement stating that (1) the plaintiff's job covered the operations of the scrap yard including the driving of scrap yard trucks; (2) the plaintiff's normal work week was six full days (including Saturday); (3) the accident occurred within the scope of the plaintiff's employment in the scrap business; (4) he had no knowledge that the truck in question was defective in any way before the accident; and (5) the truck was in regular use and in top shape. On January 18, in response to the claim letter of January 8, the defendant wrote to the plaintiff's attorney indicating that the liability coverage excluded any liability for any employee and that since the plaintiff was an employee and injured in the course of his employment on the date in question, no coverage was in effect. On January 19, the plaintiff's attorney wrote to the defendant stating that no claim was to be made under the Workmen's Compensation Act and acknowledging that if

---

[1] The relevant portions of the policy read: "This policy does not apply: . . . (d) under coverage A, to bodily injury to . . . any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured; (e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law."

the policy excluded any liability of the named insured for an employee, then he could not look to the defendant for compensation.

On May 15, 1963, the plaintiff brought an action in negligence against the insureds to recover for his injuries, a copy of the complaint being sent to the defendant. On May 23, the defendant's claims manager wrote to the insureds pointing out policy exclusion (d) concerning injuries to employees, that the defendant's actions in defending were not to be construed as a waiver of this exclusion and recommending that they retain their own counsel. No mention of exclusion (e) concerning workmen's compensation was made at that time since the defendant did not have actual knowledge that the scrap yard regularly employed two employees, and was therefore subject to the provisions of the Workmen's Compenstation Act. It was not until about six years later, in June, 1969, long after the plaintiff's suit against the insureds had concluded, that the defendant became aware that the insureds regularly employed two employees at the scrap yard.

The defendant engaged Attorney Arnold J. Bai to defend the action and, pursuant to the defendant's recommendation of May 15, the insureds also retained Attorney Albert H. Hornig. Both attorneys filed appearances for the insureds. On June 4, Russell Novella gave a sworn and recorded statement to Attorneys Bai and Hornig which contradicted his earlier statement of January 16, in that he now stated that (1) the plaintiff's trip to Mahopac was not made in the course of his employment; (2) the plaintiff did not work on Saturday afternoon; (3) the plaintiff's trip was done as a favor without compensation; and (4) he had knowledge that the steering wheel in the 1952 International had

play in it prior to the accident. Additionally, in response to a question propounded by Attorney Bai asking the insured, Russell Novella, how many employees the scrap yard had in May, 1962, the insured responded that he had only one employee, the plaintiff. The answer was technically correct since the other employee had quit on April 28, 1962, and the scrap yard had been unable to fill the position up to the time of the accident. In actuality, however, the scrap yard ordinarily, regularly and customarily employed two employees.

The defendant always has taken the position that the plaintiff's injuries arose out of and in the course of his employment and that exclusion (d) of the policy was applicable. Thus, two days after the above statements by Russell Novella to the effect that the scrap yard employed only one person and that the accident was unrelated to the plaintiff's employment, John Lyons was sent by the defendant to examine the insured's payroll book. Lyons was not an adjuster nor a claims representative nor an investigator. His sole assignment was to determine whether the plaintiff worked on Saturdays, and to establish whether the plaintiff was paid for the day of the accident with a view toward determining whether the accident would fall within the strictures of exclusion (d). The payroll book did not reveal to Lyons whether the scrap yard regularly employed two employees.

Attorney Bai filed an answer in the negligence case, but did not include a special defense to the effect that the plaintiff's injuries arose out of and in the course of his employment at the scrap yard. Attorney Bai did not plead the Workmen's Compensation Act as a defense in the initial action in what he considered to be the best interests of his clients,

the insureds, for to do so would have exposed them to a workmen's compensation claim by the plaintiff, for which they were not insured. The jury in the initial action returned a verdict for the plaintiff in the amount of $35,000 and judgment was rendered in December, 1966. This judgment was not paid.

In October, 1967, the plaintiff, as a judgment creditor of the insureds, brought suit against the defendant to compel it to pay the amount awarded in the initial action under the provisions of General Statutes § 38-175.[2] The jury in the latter case rendered a verdict in favor of the defendant. Several interrogatories were submitted to the jury pursuant to Practice Book § 247, the answers revealing that they had concluded from the evidence presented and recited above that (1) the insureds did not breach the cooperation clause as alleged in the defendant's third special defense; that (2) the operation of the motor vehicle by the plaintiff arose out of and in the course of his employment thereby exposing the insureds to liability under the Workmen's Compensation Act; and that (3) the defendant had not waived its right nor was it estopped to assert these exclusions as defenses.

On the foregoing facts and the reasonable inferences to be drawn therefrom, the jury reasonably could have reached such conclusions. The conclusions and verdict reached by the jury were within a permissible view of the evidence and, therefore, the trial court did not err in refusing to set aside the verdict or in denying a motion for judgment notwith-

---

[2] The pertinent portion of General Statutes § 38-175 reads as follows: "[I]f such judgment is not satisfied within thirty days . . . such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

standing the verdict. "For the attack on the court's refusal to set aside the verdict to succeed, it must appear that the evidence furnished no reasonable basis for the jury's conclusion . . . . The jury were confronted with conflicting evidence at every point. The choice of the more credible evidence was for them to make. *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596." *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748. "It is the province of the jury to weigh the evidence and determine the credibility and the effect of testimony; and we must decide the question whether on the evidence presented, the jury could have fairly reached their verdict for the defendants. *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611. The jury could reasonably have found in accordance with the verdict as rendered, giving the evidence the most favorable construction in support of the verdict to which it is reasonably entitled; the verdict, therefore, could not be set aside as being against the evidence and should stand. *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458, 242 A.2d 708." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305; *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141.

Nor do we find, as the plaintiff contends, that the motion for judgment notwithstanding the verdict should have been granted on the basis that an application of the law of waiver and estoppel to the evidence compels a conclusion that the plaintiff is entitled to judgment. "Waiver is the intentional relinquishment of a known right. *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 475, 196 A. 344; *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 382, 128 A. 33; *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 A. 783; *Phoenix Mutual Life Ins.*

*Co.* v. *Brenckman, . . .* [148 Conn. 391, 396, 171 A.2d 194]." *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 257, 205 A.2d 780. "To constitute waiver 'there must be both *knowledge* of the existence of the right and *intention* to relinquish it.' *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 40." *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 645, 220 A.2d 254. Waiver " 'involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear.' " *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 A. 783. "[W]here one lacks knowledge of a right there is no basis upon which a waiver of it can rest. *Taylor* v. *Lounsbury-Soule Co.,* 106 Conn. 41, 59, 137 Atl. 159; *O'Connor* v. *Metropolitan Life Ins. Co.,* 121 Conn. 599, 609, 186 Atl. 618; *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 Atl. 783." *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 475, 196 A. 344. Waiver does not have to be express, but "may consist of acts or conduct from which waiver may be implied. *Andover* v. *Hartford Accident & Indemnity Co.,* 153 Conn. 439, 445, 217 A.2d 60. In other words, waiver may be inferred from the circumstances if it is reasonable so to do. *DiFrancesco* v. *Zurich General Accident & Liability Ins. Co.,* 105 Conn. 162, 168, 134 A. 789." *Breen* v. *Aetna Casualty & Surety Co.,* supra, 646 (dissenting opinion).

In applying the foregoing principles to the case before us, we cannot say, as a matter of law, that the defendant had waived its right to plead policy exclusions (d) and (e) as defenses against the plaintiff. Clearly, express or actual waiver is not present. While both parties concede that at the time of the accident the insureds' scrap yard customarily em-

ployed two employees and was, therefore, subject to the Workmen's Compensation Act, the evidence does not disclose that the defendant had actual knowledge of this fact. On appeal the plaintiff does not contend that the defendant expressly waived the right to assert the policy exclusions. Further, his requests to charge were not grounded on any claim of actual or express waiver and he concedes that the defendant did not have actual knowledge, so that clearly he cannot prevail on this ground.

The plaintiff, however, does pursue the contention that a form of waiver was involved—a waiver implied by law from the defendant's conduct on principles of equity, or a type which might be characterized as being somewhat similar to estoppel. The conduct involved in triggering the implied waiver or estoppel doctrine was the claimed failure of the defendant, by culpable negligence or other breach of duty, to gain knowledge that the scrap yard was subject to the Workmen's Compensation Act and so to plead the act as a defense in the first suit.

"Estoppel rests on the misleading conduct of one party to the prejudice of the other. . . . In the absence of prejudice, estoppel does not exist." *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565; *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 262, 259 A.2d 598. "There are two essential elements to an estoppel— the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227; *Jensen* v. *Nationwide Mutual Ins. Co.,* supra, 261; *Spear-*

*Newman, Inc.* v. *Modern Floors Corporation,* supra; *Tradesmens National Bank* v. *Minor,* 122 Conn. 419, 424, 190 A. 270. " '[T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury.' *Bland* v. *Bregman,* 123 Conn. 61, 65, 192 A. 703." *State* v. *American News Co.,* 152 Conn. 101, 113, 203 A.2d 296. " 'The modern estoppel *in pais* is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case . . . .' *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 A. 536." *Lebowitz* v. *McPike,* 157 Conn. 235, 243, 253 A.2d 1.

"[W]hile waivers and estoppels are theoretically very different things, and the distinction between them is one easy to preserve when express waivers are under consideration, it is nevertheless true that the dividing line between waivers implied from conduct and estoppels oftentimes becomes so shadowy that . . . the two terms have come to be quite commonly used interchangeably. When the term waiver is so used, however, the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate, not a pure waiver but one which has come into an existence of effectiveness through the application of the principles underlying estoppels. . . . [T]he apparent difference between certain of the cases becomes one of terms rather than of fundamental principle." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 393, 65 A. 134. We

do not, however, place much weight on the particular label placed on the doctrine. "The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *R. H. Stearns Co.* v. *United States,* 291 U.S. 54, 61–62, 54 S. Ct. 325, 78 L. Ed. 647.

Once again, applying these principles to the present case, we cannot say, as a matter of law, that the doctrine of implied waiver or estoppel was present, since the evidence, and reasonable inferences to be drawn therefrom, amply supported the jury's conclusion to the contrary. The evidence does not demonstrate that the insureds used due diligence in ascertaining and advising their attorney as to the true facts or were in a position whereby the means of knowledge of such facts were not equally open to them. We cannot predicate an estoppel in favor of one whose own omission or inadvertence has contributed to the problem at hand. " 'It is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.' *State* v. *American News Co.,* 152 Conn. 101, 114, 203 A.2d 296." *Lebowitz* v. *McPike,* 157 Conn. 235, 243, 253 A.2d 1; *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91–92, 175 A.2d 565. Additionally, estoppel, which is equitable in origin, dictates that the conduct of the insureds as well as that of the defendant is to be considered. The evidence in the present case reveals a pattern of inconsistent conduct and statements by the insureds on such material issues as (1) whether

the accident took place within the scope of the plaintiff's employment, (2) whether the plaintiff worked on Saturday afternoons, and (3) whether the insureds had knowledge of defects on the truck. Estoppel is to protect the innocent and is based on fair dealing and principles of morality, elements lacking in the present case. "[A] party, to be entitled to the benefit of it [estoppel] is himself bound to the exercise of good faith." *Second National Bank* v. *Dyer,* 126 Conn. 101, 107, 9 A.2d 503; see 28 Am. Jur. 2d, Estoppel and Waiver, §§ 79, 80. The plaintiff, having been subrogated to the position of the insureds, may not prevail on this ground.

Nor do we find that the trial court improperly left to the jury the issue of whether the plaintiff was prejudiced by the defendant's conduct, prejudice being an essential element of estoppel. "In the absence of prejudice, estoppel does not exist. *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565, and case cited." *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 262, 259 A.2d 598. The general issue of estoppel, as well as the existence of its various elements, including prejudice, were proper questions of fact under the circumstances of the case.

Before taking up the assignments of error directed at the charge to the jury and to a ruling on evidence, it is necessary to consider numerous errors the plaintiff has assigned in the failure of the trial court to include in its finding certain facts contained in approximately twenty-one claims of proof as set out in the plaintiff's draft finding and in including in the finding approximately twenty-three paragraphs or portions thereof. "A finding in a case tried to the jury is merely a narrative of the facts claimed to have been proved by each side, made for the purpose

of fairly presenting any claimed errors in the charge
or rulings of the court. *Morgillo* v. *Evergreen Ceme-
tery Assn.,* 152 Conn. 169, 172, 205 A.2d 368; *State* v.
*Whiteside,* 148 Conn. 208, 214, 169 A.2d 260, cert.
denied, 368 U. S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33."
*Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 149,
239 A.2d 493; *Trani* v. *Anchor Hocking Glass Cor-
poration,* 142 Conn. 541, 542–43, 116 A.2d 167. With
this purpose in mind we hold that no corrections in
the finding are warranted. A number of the assign-
ments of error pertaining to the finding were ex-
pressly abandoned; others merely seek " 'to secure a
meticulous accuracy as to details' "; *Fairbanks* v.
*State,* 143 Conn. 653, 655, 124 A.2d 893; some are
immaterial; *Phoenix Mutual Life Ins. Co.* v. *Brenck-
man,* 148 Conn. 391, 394, 171 A.2d 194; and the find-
ing as a whole clearly presents the claims of proof
necessary for a proper disposition of the errors as-
signed to the charge and ruling on evidence. See
Maltbie, Conn. App. Proc. § 160, and cases cited.
"It serves no useful purpose to seek corrections
in the finding which would not make clearer the
situation as related to the claimed errors. *Vor-
onelis* v. *White Line Bus Corporation,* 123 Conn. 25,
27, 192 A. 265." *Trani* v. *Anchor Hocking Glass Cor-
poration,* supra, 543; *Szela* v. *Johnson Motor Lines,
Inc.,* 145 Conn 714, 719, 146 A.2d 910; *Salvatore* v.
*Hayden,* 144 Conn. 437, 439, 133 A.2d 622; *Fairbanks*
v. *State,* supra.

We now turn to the errors claimed in the charge.
With regard to the issues of waiver and estoppel,
the plaintiff assigned as error (1) the failure of the
trial court to charge as requested in several para-
graphs of the finding and (2) the trial court's in-
structions to the jury as contained in nine para-
graphs of the finding.

In one of his requests the plaintiff asked the trial court to instruct the jury that "[i]f you find that the failure on the part of the defendant and its representatives to find out during the course of the first lawsuit that Novella's Scrap Yard customarily had two employees was the result of culpable negligence on their part, and if you find that at that time the defendant was contending that plaintiff's injuries arose out of and in the course of his employment . . . then . . . you *must find* that the defendant waived its right to claim in this case that plaintiff's injuries arose out of and in the course of his employment . . . and the defendant is estopped from making such a claim." (Emphasis supplied.) Similarly, in another request the plaintiff requested the trial court to instruct the jury as follows: "It is admitted . . . that Attorney Bai did not plead the workmen's compensation defense on behalf of . . . [the insureds] in the prior action. Plaintiff, however, claims that defendant and Attorney Bai knew, or should have known, that at the time of plaintiff's injuries, Novella's Scrap Yard customarily employed two employees and that they should have known, therefore, that if plaintiff's injuries arose out of and in the course of his employment, the . . . Act was a valid and effective defense . . . . If you find these claims of the plaintiff to be proved, then you *must find* that the defendant waived its right to claim in the present case that plaintiff's injuries arose out of and in the course of his employment and you *would have to find* . . . that the defendant is not entitled to rely either on its First Special Defense, which refers to the employee exclusion in its policy, or to the Second Special Defense, which refers to the workmen's compensation exclusion . . . . [Y]ou *would* also *have to find* that the defendant is estopped." (Emphasis sup-

plied.) The trial court properly refused to charge as requested. An analysis of these two charges reveals that they would have improperly invaded the province of the jury by requiring them, as opposed to permitting them, to find that the defendant was estopped or had waived its defenses based on exclusions (d) and (e) of the insurance policy in question. The trial court was not required so to charge the jury. See *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 310, 268 A.2d 639; *Moonan* v. *Clark Wellpoint Corporation,* 159 Conn. 178, 186, 268 A.2d 384; *Penna* v. *Esposito,* 154 Conn. 212, 214, 224 A.2d 536. Similar disposition may be made of errors claimed in the failure of the court to charge as requested in two other paragraphs of the finding. Here again, the mandatory language would have improperly invaded the province of the jury.

Numerous paragraphs of the charge which have been attacked deal with the issue of estoppel. As noted above, the gravamen of the plaintiff's appeal is that by the defendant's conduct at the first trial in failing, due to culpable negligence or other breach of duty, to ascertain that the insureds' business was within the realm of the Workmen's Compensation Act and to plead the act as a defense, the defendant is precluded or estopped from using the defense of the act in the present case, the latter conduct being inconsistent with its position in the first case. In relation thereto, the plaintiff contends that the jury instructions concerning estoppel, although perfectly correct as drafted, were confined solely to estoppel by representation and ruled out any consideration by the jury of the theory of quasi-estoppel or estoppel by prior inconsistent conduct.

"The test of a charge is not whether it applies pertinent rules of law to every ramification of facts

conceivable from the evidence. Rather, it is whether the charge 'fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law.' *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 20, 118 A.2d 798; *Steinecke* v. *Medalie*, 139 Conn. 152, 157, 90 A.2d 875." *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 721, 146 A.2d 910. "The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Worden* v. *Francis*, 153 Conn. 578, 579, 219 A.2d 442." *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 255 A.2d 848. "[I]t must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *Warner* v. *McLay*, 92 Conn. 427, 429, 103 A. 113; *Bogudski* v. *Backes*, 83 Conn. 208, 215, 76 A. 540. If it meets this test, it will ordinarily be sustained although it may not be exhaustive, perfect or technically accurate. *Chesebro* v. *Lockwood*, 88 Conn. 219, 224, 91 A. 188; *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 275, 79 A. 673; *Kelley* v. *Killourey*, 81 Conn. 320, 324, 70 A. 1031." *Castaldo* v. *D'Eramo*, 140 Conn. 88, 94–95, 98 A.2d 664.

Viewing the charge as a whole, as we must do; *Enlund* v. *Buske*, 160 Conn. 327, 331, 278 A.2d 815, *Hanken* v. *Buckley Bros., Inc.*, 159 Conn. 438, 441, 270 A.2d 556; it is apparent that the charge adequately instructed the jury on the principles of estoppel or implied waiver and their application to the case at bar. The charge stated that estoppel may be based on representations, admissions, silence, acts, omissions to act and misleading conduct. Additionally, it thoroughly covered the duty of the defendant to investigate all possible defenses and its duty to exercise reasonable care in conducting the defense.

The plaintiff next assigns as error several portions

of the charge concerning the doctrine of waiver. In one, the trial court charged that "waiver is the voluntary relinquishment of a known right. It involves the idea of assent; and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear. The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct." Then the court continued: "So, in determining whether or not there was a waiver here, you must consider the definition of a waiver and apply it to the facts in this case. Was there a waiver on the part of the defendant? And waiver . . . is the voluntary relinquishment of a known right." Since the plaintiff concedes in his claims of proof that the defendant did not have actual knowledge that the insureds were subject to the provisions of the Workmen's Compensation Act, and his basis of recovery rests on the defendant's culpable negligence in failing to know, it is argued that any charge on express or actual waiver was improper and probably distracted the jury from considering implied waiver or estoppel. We find no merit to this contention. While the plaintiff may have abandoned any claim of express or actual waiver for appellate purposes, the record reveals that express waiver was pleaded at the trial level. We hold, therefore, that the initial charge on waiver, and its reiteration in substantially identical language following a request by the jury for further instructions, were properly included and proper in form, having touched on all the essential elements of the doctrine as defined earlier in this opinion. Nor did the inclusion of these portions of the charge preclude the jury from considering implied waiver or estop-

pel, other portions of the charge, as noted above, properly and thoroughly charging on those doctrines. At worst, the charge was harmless, if not beneficial, having provided an additional basis on which the plaintiff could have prevailed by allowing the jury to find waiver if it found actual knowledge on the part of the defendant. See *Reardon* v. *Mutual Life Ins. Co.,* 138 Conn. 510, 519, 86 A.2d 570. Similarly, the inclusion in the charge of several additional paragraphs, if indeed error, was harmless when considered in context with the charge as a whole.

The plaintiff next assigns as error the failure of the trial court to charge the jury that they must find Attorney Bai acted as attorney for the insureds and that if he knew or should have known that the insureds were subject to the provisions of the Workmen's Compensation Act, he was obligated to plead that defense. While number 15 of the Canons of Professional Ethics provides that a client "may expect his lawyer to assert every . . . remedy or defense," the plaintiff's request was improper in that the duty of an attorney to assert a given defense necessarily depends on considerations beyond those stated in the request. In the case before us, the defendant offered evidence to prove and claimed to have proved that Attorney Bai intentionally did not plead the act as a defense in the best interests of his clients since so to plead would have exposed the insureds to a workmen's compensation claim by the plaintiff, for which they were not insured, and to resulting criminal sanctions. The request to charge as drafted being improper, the trial court was correct in not so charging. Nor do we find that the request to charge contained in paragraph 247 of the finding to the effect that the jury "must find that Attorney Arnold Bai was the attorney for both . . . [the de-

fendant] and . . . [the insureds]" is a proper one, there being claims of proof that Attorney Bai conceived his duty to be solely to the insureds as opposed to the defendant and that he did not feel he was representing the defendant. While he may have looked to the defendant for compensation and kept the defendant informed about the progress of the case, we do not find those factors to be conclusive. "An attorney's allegiance is to his client, not to the person who happens to be paying him for his services." *Martyn* v. *Donlin,* 151 Conn. 402, 414, 198 A.2d 700. Attorney Bai's primary responsibility was to the insureds and to represent them in accordance with what he considered to be their best interests. There is nothing in the record to indicate that he was in any way derelict in this duty.

The plaintiff next contends that the trial court erred in refusing to charge as requested that: "If you find that there was any dereliction on the part of Attorney Hornig in failing to plead the Workmen's Compensation Act for his clients . . . [the insureds] in the former action, or to insist upon Attorney Bai pleading it, any such dereliction would not excuse Attorney Bai or the defendant for their dereliction in failing to plead it. A party may not excuse his own shortcomings by relying upon the wrong of another." Since the claims of proof, by which the charges and requests to charge are tested, do not show that contributory negligence was an issue in the case, the trial court properly refused to charge as requested. *Hunyadi* v. *Stratfield Hotel, Inc.,* 143 Conn. 77, 83, 119 A.2d 321.

We find no merit to the plaintiff's contention that the trial court erred in charging the jury that: "The mere fact the employee was not paid for the time spent in delivering the truck, is entirely immaterial

if you find the other element present." In *Waters* v. *Service Oil Co.,* 132 Conn. 388, 391, 44 A.2d 709, in discussing whether a party's injuries arose in the course of his employment, we stated: "That he was not receiving any stated pay at the time he was injured is not of controlling importance." While a holding that receiving a salary at the time in question is "not of controlling importance" is not to say that it is "entirely immaterial," the charge was harmless since the jury unmistakably were instructed that receiving salary was immaterial only "if you find the other elements present." The jury could not be said to have misunderstood this qualification. " '[A]n appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning.' *Foote* v. *Brown,* 81 Conn. 218, 227, 70 A. 699; *State* v. *Parker,* . . . [114 Conn. 354, 370, 158 A. 797]; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611." *State* v. *Johnson,* 139 Conn. 89, 93, 90 A.2d 905; *DePaola* v. *Seamour,* 163 Conn. 246, 253, 303 A.2d 737.

Of the various assignments of error directed toward rulings made during the course of trial, only one has been pursued on appeal. The plaintiff contends that it was error not to admit into evidence the plaintiff's exhibit N for identification. During the cross-examination of Attorney Bai, who had been called as a witness by the defendant, the following transpired: "If Your Honor please, I'd like to offer into evidence at this time, plaintiff's Exhibit N for identification, which was identified by Mr. McCormick as memorandums that he made for his file." The court responded: "Show it to counsel," whereupon counsel for the defense said: "Objection. I

object to it, Your Honor." The court then said: "Let me see it. I don't even know what it is. (Handing) It's offered. And the objection is sustained." The attorney for the plaintiff asked for an exception which was granted by the court. Since neither party complied with the provisions as set forth in Practice Book § 226 requiring a clear statement of claim with respect to the admissibility or inadmissibility of the evidence, the ruling cannot be held to constitute reversible error. "Neither the grounds on which the objection was based nor the grounds on which the question was claimed were stated by counsel as required by Practice Book § 226. If a . . . [party] in such a situation wishes to except to a ruling excluding evidence which was objected to only generally, he must avail himself of the provisions of the rule and state his claim of admissibility. *Acampora* v. *Ledewitz,* 159 Conn. 377, 381, 269 A.2d 288; *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 612, 236 A.2d 466; *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153. Since the . . . [plaintiff] failed to state the ground for his claim of admissibility, the ruling cannot be held to be reversible error. *Krattenstein* v. *G. Fox & Co.,* supra; *Morgillo* v. *Evergreen Cemetery Assn.,* 152 Conn. 169, 176, 205 A.2d 368; *State* v. *Hanna,* 150 Conn. 457, 460, 191 A.2d 124; *State* v. *Smith,* 149 Conn. 487, 490–91, 181 A.2d 446; *State* v. *Whiteside,* 148 Conn. 208, 217, 169 A.2d 260, cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33; *Megin* v. *Carney,* 148 Conn. 130, 134, 167 A.2d 855; *Casalo* v. *Claro,* supra. 'All this is but an obvious application of the fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was prob-

ably harmful to him.' *Casalo* v. *Claro,* supra." *State* v. *Hawkins,* 162 Conn. 514, 515–16, 294 A.2d 584.

There is no error.

In this opinion the other judges concurred.