[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter came before the Court on an Application for a Prejudgment Remedy (hereafter, "PJR").
Plaintiff claims that the defendants breached a lease agreement by virtue of non-payment of rent; and seeks a PJR against the interest in real property of James P. Driscoll, and such other real and/or personal property of the defendants and to garnish such debts due defendants. The issue is whether or not probable cause exists that a judgment will be rendered in favor of the applicant. If CT Page 3241 probable cause exists, then the Court must determine the amount of damage and the properties to subject to the PJR.
On or about September 15, 1988 Norwalk Twin Towers Associates as Landlord entered into a lease agreement with Tenant Davidson, Driscoll, and Naylor acting by "its partners" Robert M. Davidson, James P. Driscoll and Howard B. Naylor for premises located at 535 Connecticut Avenue, Norwalk. The premises consisted of 13,884 square feet of office space on the fourth floor. The partners as individuals signed the following guaranty:
 In consideration of the letting of the premises within described to the Tenant withinnamed, the undersigned hereby guaranty to the Landlord, its successors and assigns, the payment by the Tenant of the rent within provided for, and the performance by the Tenant of all the provisions of the within lease and of any renewals thereof, and any and all damages that may accrue by reason of the non-fulfillment thereof, hereby waiving notice of all defaults or non-performance, the requirement of any demand, and all extensions of time, the Landlord, its successors or assigns may grant.
Subsequently on March 22, 1989 Norwalk Twin Towers Inc. entered into a Modification Agreement with the Tenant. The agreement recited the fact that Landlord's predecessor in title and the Tenant had entered into a lease on July 15, 1988 and now desired to modify the lease with regard to the commencement date and to the payment by the Landlord of the unused portion of a credit for tenant improvements.
The Tenant partnership took possession of the premises for a term of ten years.
Mr. Driscoll subsequently left the partnership in April 1989. Defendant Leepson joined the remaining "partners." When he left in January, 1990, Davidson and Naylor continued to conduct their law practice at the subject premises. How or if these partnerships were formed, dissolved and reformed, is irrelevant at this juncture.
The lease and modification agreement provided that rent would be abated for the first year. Therefore, the Defendants paid no rent in 1989. The first rent payment was due on January 1, 1990. It was never paid, nor were any other rental payments made. The Plaintiff instituted a summary process action as a result of which the tenants vacated the premises on June 27, 1990.
In Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,18 Conn. App. 384, 388, the Court states, "When a Lessee breaches a lease for commercial property the Lessor has two options: (1) to terminate CT Page 3242 the tenancy, or (2) to refuse to accept the surrender. (Citations omitted) . . . When the Landlord elects to terminate the tenancy the action is one for breach of contract; (citations omitted) . . . and when the tenancy is terminated the Landlord is obliged to mitigate his damages.
The Court goes on to say that the measure of damages is that which would place the injured party in the same position as it would have been in had the contract been fully performed. The amount of rent agreed to by the Parties is a proper measure of damages. (at 389, 390)
According to the lease agreement between the parties, tenants' rent was abated for the first year. The base rent for the second, third, fourth and fifth year's of the lease was $312,390 per year. The base rent for the five years remaining was $395,694 per year. Therefore the total base rent to have been paid to the Plaintiff is $3,228,030.
The Plaintiff sought to mitigate its losses by leasing the premises. It succeeded in attracting two tenants to share the space; the term for each is less than 10 years, and base rental payments are also less. The Plaintiff's representative testified that the effect of the economic downturn on real estate made it more difficult to rent the premises. Efforts to find tenants included producing a flyer and showing the area to prospective tenants.
In re-leasing the premises the Plaintiffs expended approximately $80,000 for commissions, legal fees and tenant improvements. The two new leases involved a call for a total of base rent payments over a period of nine years of $1,885,831. [The Court cannot speculate as to any further reduction of the net rent loss for the two years for which a portion of the premises is not presently leased.]
The parties' lease also called for the payment of additional monies, such as service rent, late fees, and interest penalties. (Articles 2.4 and 2.5; 2.8)
Under Connecticut General Statutes Section 34-53(b) all partners are liable jointly for all debts and obligations of the partnership.
Defendant Driscoll claims that he is not liable in damages. He testified that at the time of his termination, an involuntary one on his part, the partnership owed no rent because the first year's rent had been abated. He also seeks to be freed from liability as a guarantor, claiming that he interpreted the guaranty as being "limited." The Court does not agree. CT Page 3243
"A guaranty is a collateral understanding to pay a debt or perform a duty, in case of the failure of another person, who is in the first instance liable to such payment or performance." Ball Electric Light Co. v. Child, 68 Conn. 522, 525.
The Court finds that defendant Driscoll personally guaranteed the original partnership's payments and performance as did the defendants Davidson and Naylor.
Further, the defendants Driscoll, Davidson and Naylor represented themselves to be partners by "words. . . written" and are liable to any person or corporation and other association who has given credit to the partnership. (Connecticut General Sec. 34-54).
The individuals named held themselves out to the Plaintiff's agent as partners and must therefore be treated as partners for the purposes of the PJR application. Accordingly, defendants Davidson, Driscoll and Naylor are liable both as partners as well as individuals for the payment and performance obligations under the lease.
Defendant Leepson joined the firm as a "non-voting partner" on or about December 1, 1988 and a voting partner on February 1, 1989. (Plaintiff Exhibit H) He left the firm on January 8, 1990. (Plaintiff Exhibit G) if not on December 31, 1989. (Plaintiff Exhibit H) Ms. Gardner testified that she dealt with him from October 17, 1989, understood him to be a partner and had to provide a new sign to show Leepson as a member of the firm. Leepson is liable for all obligations arising before his admission into the partnership but his liability is limited to his interest in the partnership property. (Connecticut General Statutes, Section 34-55).
The Plaintiff's representative testified that rent abatement for 1989 had been negotiated, at least in part, because of the long term of the lease. The defendant Driscoll is estopped to deny that no debt accrued during his tenure as a partner (Connecticut General Statutes Section 34-42 (2)) if in fact the abatement was a part of the consideration for the lease agreement. "There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change its position or do some act to his injury which he otherwise will not have done." Fawcett v. New Haven Organ Co., 47 Conn. 224, 227; Novella v. Hartford Accident and Indemnity Co., 163 Conn. 552, 562.
As to defendant Leepson, the lease was in effect when he entered the "partnership" and he benefitted [benefited] from possession of the premises while he remained with Davidson and Naylor and from the rent abatement in effect. CT Page 3244
Defendant Driscoll claimed that the lease ran between Norwalk Twin Towers Associates and Davidson, Driscoll Naylor as Tenant. His position is that although the corporation brought suit there was no competent evidence presented by the Plaintiff that Norwalk Twin Towers Inc. was a successor to Norwalk Twin Towers Associates.
The Court rejects this view of the matter. First the defendants vacated the premises after judgment of possession was entered in a summary process case brought by Norwalk Twin Towers Inc. against Davidson, Driscoll Naylor, Robert M. Davidson and Howard B. Naylor, apparently without contesting the Plaintiff's entity. Further, the Defendants executed a Modification Agreement on March 22, 1989 in which the Landlord was named as Norwalk Twin Towers Inc. and which recited that "Landlord's predecessor in title" and the Tenant entered into a written lease on July 15, 1988. At that time it must be assumed that the Tenant knew the entity with which it was contracting; and that the Tenant agreed that Norwalk Twin Towers Inc. was indeed the successor in interest to Norwalk Twin Towers Associates.
For the foregoing reasons, the Court finds that there is probable cause that judgment will be rendered in favor of the Plaintiff. Therefore, the Defendants' application for a Prejudgment Remedy to attach certain of the Defendants' properties and to garnish debts due to the Defendants is granted as to defendants Driscoll, Davidson and Naylor. As to Defendant Leepson, the request to attach his personal property and debts due him is denied; it is granted as to his interest, if any, in the partnership's assets. Said properties may be attached and/or garnished in the amount of $1,750,000.
Leheny, J.