612

STATE OF CONNECTICUT *v.* ANONYMOUS (1977–9)*

APPELLATE SESSION OF THE SUPERIOR COURT

DAVID M. SHEA, J. The defendant was charged with larceny in the fourth degree in violation of General Statutes § 53a-125 and with disorderly conduct in violation of § 53a-182. The jury found her not guilty of larceny but guilty of disorderly conduct. From the judgment rendered upon the latter verdict the defendant has appealed claiming error in the denial of her motion to set aside that verdict for insufficient evidence, in the charge to the jury,

---

* Thus entitled, in view of General Statutes § 54-90.

in overruling her challenge to the array, and in a ruling on the evidence. Although we have concluded that the case must be remanded for a new trial because of error in the charge, we must discuss the other claims of error which might warrant an acquittal or which may arise upon a retrial.

I

In considering the refusal of the trial court to set aside the verdict on the disorderly conduct charge we must view the evidence in the light most favorable to the state. *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 555. Although the verdict of the jury on the larceny charge imports disbelief of some of the testimony related to that charge, we recite the facts which reasonably could have been found from the evidence tending to support the verdict, as follows: On the day of the alleged offense the defendant and her ten-year-old child went to a supermarket for the purpose of shopping for groceries. An assistant manager of the store testified that he saw the defendant take a ham wrapped in a plastic bag from the meat counter and place it in her purse which was lying in a grocery cart. He watched her at intervals as she did her shopping. As she came through the checkout stand that employee was assisting the cashier by placing the purchases in bags. He saw the defendant pay about sixty dollars for her groceries and he proceeded to fill five bags with the items for which she had paid, which did not include the ham he had seen her take. As the defendant left the checkout counter with the cart containing her groceries, the assistant manager approached her, asked where the ham was which he had seen her take from the meat counter, and demanded that she show him what was inside her purse. When she denied his accusation and refused to open her purse,

he seized the front of the grocery cart and led the defendant, who was holding on to the cart, toward the rear of the store.

The assistant manager testified that, as they came to the courtesy desk near the checkout stand, the defendant opened her purse and he saw the ham inside. He told the girl at the desk to call the police. The defendant proceeded to walk toward the meat counter. She took the ham out of her purse and threw it into the meat case. She said that since she was being accused of stealing a ham, she was going to steal two hams, and she then picked up two hams. The employee attempted to guide her and the grocery cart to the rear of the store but the defendant took a couple of bags of groceries out of the cart and threw them onto the floor. When the assistant manager called for help she began to shout profanities at him and ten or fifteen people gathered around. She grabbed a bottle of soda from a shelf and held it as if she were going to throw it at him. She walked toward the front of the store in order to leave, but the assistant manager and other store personnel stood in front of the doors to block her exit. One employee pulled the soda bottle which she was holding out of her hand. She threw at him the two hams which she had picked out of the case and which the assistant manager had brought to the front of the store and placed on a stand near the entrance. The defendant obtained a long-toothed comb and started swinging it at the employees guarding the doors, striking two of them. She also pulled down her pants and uttered some obscenities.

It is abundantly clear from this recital that there was ample evidence that the defendant "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof" did engage "in

fighting or in violent, tumultuous or threatening behavior" in violation of General Statutes § 53a-182.[1] The defendant's argument to the contrary relies on the principle that a person is justified in using reasonable physical force in defense of person or property. General Statutes §§ 53a-19, 53a-21. The factual basis for that claim rests entirely on the testimony of the defendant, however, which the jury need not have credited. We are satisfied that there was sufficient evidence to support the verdict.

## II

The defendant claims error in the failure of the trial court to instruct the jury in accordance with her written request to charge that, in the language of General Statutes § 53a-21, "[a] person is justified in using reasonable physical force upon another person when . . . and to the extent he reasonably believes it necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force . . . ." The reason stated by the trial court for denying the request was that there was insufficient evidence to warrant submission of that claim of justification to the jury. Instructions were given on the defense of justification for the use of force in self-defense under General Statutes § 53a-19 and also on the defense of duress under § 53a-14.

---

[1] Section 53a-182, entitled "Disorderly conduct: Class C misdemeanor," provides in relevant part: "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse."

In reviewing this claim we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support. The defendant testified that, after she had completed her shopping and had paid for her purchases, her grocery cart was abruptly seized by the assistant manager who dragged it, as she held on, toward the rear of the store, where he falsely accused her of stealing a ham. That employee would not let go of the cart, so she picked up one of the bags of groceries, but he bumped her arm and caused the groceries to spill back into the carriage. She walked back toward the front of the store carrying a bottle of sauce which she had purchased. She found the front doors blocked by three men, one of whom seized the bottle of sauce from her hand causing her hand to be cut. She then threw two hams which she found near the front of the store at this employee. Another employee approached her with a grocery stamping mechanism in his hand, as if to hit her with it, but she grabbed it from his hand and threw it at him. She attempted to go out the door, but one of the men put his hands on her to restrain her from leaving the store. When the police came they would not listen to her side of the story. She never did receive the groceries for which she had paid.

We think that in the eyes of a falsely accused customer, which the defendant claimed and has now been determined to be, the conduct of the store employees could have been found by the jury to justify a reasonable belief that her property had been taken by larceny. "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." General Statutes § 53a-119. The seizure of her groceries in the cart, as well as the bottle of sauce from her hand, con-

stituted a wrongful taking of her property according to her testimony. It would not have been wholly unreasonable for the defendant to have inferred from the actions of the store employees that they intended to "appropriate"[2] the groceries she had paid for to their own use or that of a third person. It is familiar law that a person is presumed to intend the natural consequences of his acts. *State v. Smith*, 157 Conn. 351, 354.

If the defendant reasonably believed that her groceries had been taken from her by larceny, she was justified in using reasonable physical force to the extent she reasonably believed it necessary to regain them. General Statutes § 53a-21. Not all of her actions as described by the prosecution witnesses would have fallen within the sanction of this statute because some of them did not involve the use of physical force and had only a tenuous relationship to regaining her property. We cannot determine, however, upon which of her actions the jury relied in concluding that she was guilty of disorderly conduct. If their verdict was based on her throwing the hams at the employee who took the bottle of sauce from her, an event confirmed by that employee's own testimony, the circumstances would have warranted consideration of her claim that she was attempting to regain her property.

It must be kept in mind that, although justification under § 53a-21 is spoken of as a defense, the state had the burden of disproving it beyond a reasonable doubt. General Statutes § 53a-12. The

---

[2] General Statutes § 53a-118 (a) (4) provides: "To 'appropriate' property of another to oneself or a third person means (A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person."

defendant was entitled to have the matter submitted to the jury if there was sufficient evidence to raise a reasonable doubt concerning justification.

We conclude that the court erred in failing to grant the requested charge on the issue of justification under § 53a-21.

### III

We need not consider in any detail the challenge to the array which the defendant made after twelve prospective jurors had been chosen from the entire panel for the purpose of a voir dire examination. The challenge was not timely raised as required by Practice Book § 477E.[3] The claim of the defendant before the trial court was that black people were under-represented on the particular panel from which the jury was selected because it included only one black person. The grounds for the challenge relied on in this appeal are (1) that General Statutes § 51-220 unlawfully discriminates against black people by specifying numbers of veniremen to be drawn from the towns according to population in such a manner that the larger the town, the smaller is the percentage of the town population needed to fill the statutory quota for the town; and (2) that this system violates the "one man, one vote" principle of *Baker* v. *Carr,* 369 U.S. 186. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69. Furthermore, none of the statistics or data relied

---

[3] Practice Book § 477E, repealed as of October 1, 1976, was in effect at the time of trial and provided as follows: "Any challenge to an array, whether grand jury or petit jury, shall be made within five days after notification of the hearing date or trial date, unless the defect claimed has arisen subsequent to the time required to make such motion." The grounds relied on in this appeal existed long before expiration of the time to make the motion.

on in the defendant's brief and obtained from undisclosed sources was presented to the trial court, nor are they properly a part of the record before us. Even if we were to consider this information, it would be insufficient to enable us to ascertain whether a disproportionate number of black people were being excluded from juries in the geographical area involved, since jury selection is based on voter registration rather than on population. *State* v. *Townsend,* 167 Conn. 539, 549.

## IV

The ruling on evidence that the defendant has claimed as error is related to a question asked by the defendant on cross-examination of the assistant manager. The question was whether that employee had any reason to believe that the groceries purchased by the defendant were not placed back on the shelf at some time after the incident. The court sustained the objection on the ground of relevancy and an exception was noted. The defendant argues that the question was relevant to her defense under General Statutes § 53a-21, one element of which was a reasonable belief that her property had been taken by larceny. Since the question pertained to something which may have occurred after the incident had transpired, the answer could have no bearing on her mental state at the time of the actions upon which the disorderly conduct charge was based. The ruling was correct.

There was error in the failure to grant the requested charge, the judgment is set aside and the case is remanded for a new trial.

In this opinion PARSKEY and SPONZO, Js., concurred.