[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
INTRODUCTION
The National Casualty Company ("National") issued a manufacturers `and contractors' liability policy to Carl J. Stella d/b/a C. J. S. Construction Company. Subsequently, James Tomascak brought a tort claim against Stella. Now, National brings this action for declaratory judgment and in its prayer for relief recites "the plaintiff in the above entitled matter seeks a determination by this court of the legal rights and responsibilities of the parties to this action. The plaintiff claims that it had no duty to indemnify the defendant against the claims of Mr. Tomascak." Complaint for Declaratory Judgment, dated May 3, 1989 at 2-3.
FINDINGS OF FACT
From the admissions in the pleadings and the evidence deemed credible, the court makes the following findings of fact.
1. On or about January 19, 1986, National issued a manufacturers' and contractors' liability policy to Carl J. Stella d/b/a C.J.S. Construction Company with limits of $100,000.00 and with a policy coverage period of January 19, 1986 to January 19, 1987. This policy indicated that National would defend and indemnify Stella against claims proper to his business and the policy document described the insured's hazards as "siding installation-wood" with a code number of "17615". Plaintiff's Exhibit C. Stella never read this policy.
2. On or about August 27, 1986, while the policy was in force, Stella was engaged in excavating and grading property owned by James Tomascak of Southbury, Connecticut in connection with the installation of a swimming pool being installed on the Tomascak property by a contractor other than Stella.
3. James Tomascak was injured while helping Stella load equipment onto Stella's trailer.
4. During August of 1988, Tomascak instituted a law suit against Stella in this judicial district. Plaintiff's Exhibit D. CT Page 2111 In response to Tomascak's claim, Stella submitted that litigation to National and requested that it defend and indemnify him.
5. Under date of May 7, 1987, Stella executed a "Non-Waiver Agreement" with National. Plaintiff's Exhibit F. Under date of May 8, 1987, National in a letter advised the defendant that "coverage may not be afforded." Plaintiff's Exhibit G. (Emphasis in original).
6. Subsequently, a National representative telephonically advised Stella that he was covered and then National, under a letter dated July 9, 1987, advised Stella concerning the Tomascak claim that "your National Casualty Company policy protects you and provides for payment of a combination of expenses and damages that are within your policy limits which exceed $250." Further, in this July 1987 letter, National reported to Stella that it had spent $307.81 in protecting him and requested under terms of the policy that he remit to it the deductible of $250, which Stella did. Defendant's Exhibits 1 and 2.
7. In its policy of insurance, National provided that its obligations under the policy applied only "to the amount of damages in excess of any deductible amounts stated. . . ." Plaintiff's Exhibit C "Deductible Endorsement".
8. Under a letter dated November 23, 1987, National informed Stella that there was no coverage and that it was entitled to his $250 deductible payment for "adjustment expenses" incurred by National. Plaintiff's Exhibit H.
9. National thereafter retained a law firm to defend Stella in connection with the Tomascak litigation. Stella knows nothing about any reservation of rights by National when it retained these attorneys for him.
10. Under letter dated July 19, 1989, National's Connecticut attorneys offered to return to Stella the $250 deductible paid by him. Defendant's Exhibit 3.
11. Under a letter dated January 10, 1991, during the pendency of this declaratory judgment litigation, National advised Stella that the Tomascak claim was "over $15,000 and that it might be in excess of the limits of liability provided by your insurance policy. This company cannot be responsible for the payment of amount in excess of these limits of liability in the settlement of any claim or satisfaction of any judgment which may be rendered. You may, therefore, be personally liable for such amount." Further, this letter informed Stella that he might wish to engage other counsel "in the defense of. . . [his] uninsured exposure in this suit." Defendant's Exhibit 4. CT Page 2112
12. Stella, based on National's conduct, thinks that National will not only defend him, but will indemnify him against the Tomascak claim.
13. During the life of the policy, National did audit Stella's records.
CONCLUSIONS
1. National is certainly aware of its rights and obligations under this policy. We think it has demonstrated a course of conduct, particularly with its letters of July 9, 1987 and January 10, 1991 wherein it impliedly waived its right to disclaim coverage. Norella v. Hartford Accident Indemnity Company,163 Conn. 552, 561-66 (1972).
2. National has affirmatively represented to Stella that he was covered under its policy in the wake of the the Tomascak claim. Stella himself has reasonably been expecting such protection and has been relying on National's representations and the law firm it retained to protect him. Consequently, we conclude that National is estopped from denying coverage under this policy. Norella v. Hartford Accident Indemnity Co., supra; Breen v. Aetna Insurety Company, 153 Conn. 633, 643 (1966); Bouchard v. Travelers Indemnity Co., 28 Conn. Sup. 122 (Super. Ct. 1969); see also S.H.V.C., Inc. v. Roy, 188 Conn. 503, 510
(1982) on implied waivers and estoppels by conduct.
3. National must provide coverage under the policy limits to Stella in the wake of the Tomascak claim.
So ordered.
A judgment may enter accordingly,
WILLIAM PATRICK MURRAY A Judge of the Superior Court